UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,
        Plaintiff,

       v.                  Case No. 1:23-cv-10393

COLUMBIA UNIVERSITY and
TRUSTEES OF COLUMBIA UNIVERSITY,
        Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**


May 19, 2024

JOHN DOE
*Pro Se* Plaintiff

TABLE OF AUTHORITIES

*Cases* *Page(s)*

Dalton v. Educational Testing Service..................................................................................................7
    87 N.Y.2d 384, 389 (1995)

Davis v. Monroe Cty. Bd. of Educ.,
    526 U.S. 629 (1999)....................................................................................................14, 18

Doe v. Poly Prep Country Day Sch.,
    No. 20-CV-3628 (KAM), 2022 WL 2917890 (E.D.N.Y. July 25, 2022).........................8, 9, 11

Feminist Majority Found. v. Hurley,
    911 F.3d 674 (4th Cir. 2018).........................................................................................14, 18

Gillman v. Chase Manhattan Bank, N.A.,
    73 N.Y.2d 1 (1988)........................................................................................................7, 10

Haywood v. Drown,
    556 U.S. 729 (2009).......................................................................................................6, 10

Kane v. Mount Pleasant Cent. Sch. Dist.,
    80 F.4th 101 (2d Cir. 2023)................................................................................................13

Mandel v. Liebman,
    303 N.Y. 88 (1951)..........................................................................................................6, 7

Mangini v. McClurg,
    24 N.Y.2d 556 (1969)....................................................................................................8, 11

Mirra v. Jordan,
    585 F. Supp. 2d 520 (S.D.N.Y. 2008)...........................................................................15, 16

Newin Corp. v. Hartford Accident & Indem. Co.,
    37 N.Y.2d 211 (1975)....................................................................................................7, 10

Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,
    86 N.Y.2d 685 (1995).........................................................................................................13

Robertson v. Douglas S. S. Co.,
    510 F.2d 829 (5th Cir. 1975)..................................................................................11

Vasquez v. Glassboro Serv. Ass'n, Inc.,
    83 F.3d 86 (3d Cir. 1996).................................................................................6, 10

Washington v. Davis,
    426 U.S. 229 (1976).........................................................................................14, 18

*Statutes & Rules:*                                                                                              *Page(s)*

20 U.S.C. § 1681 et seq. (Title IX)...............................................................................14, 18

28 U.S.C. § 1367(a)..............................................................................................................13

Fed. R. Civ. P. 15(a)(2)........................................................................................................13

N.Y. C.P.L.R. 214-j................................................................................................................8

*Other Authorities:*                                                                                             *Page(s)*

2024.01.18 - Letter from G. Tenzer to Judge Ho....................................................7, 14

Sponsor's Mem., Bill Jacket, L. 2022, ch. 203...............................................................12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,
        Plaintiff,

       v.                Case No. 1:23-cv-10393

COLUMBIA UNIVERSITY and
TRUSTEES OF COLUMBIA UNIVERSITY,
        Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff John Doe ("Plaintiff"), proceeding pro se, respectfully submits this memorandum of law in opposition to the motion to dismiss filed by Defendants Columbia University and Trustees of Columbia University (collectively, "Columbia" or "Defendants"). For the reasons set forth below, Defendants' motion should be denied in its entirety. In the alternative, Plaintiff requests that the Court stay the motion to dismiss to allow Plaintiff to conduct limited discovery on the formation and execution of the settlement agreement and Columbia's handling of Plaintiff's January 2023 complaint.

**PRELIMINARY STATEMENT**

Plaintiff, an African-American gay male and former student at Columbia, brings this action against Columbia for its egregious mishandling of Plaintiff's reports of sexual assault and for the unconscionable settlement it coerced Plaintiff into accepting after he initially filed suit in 2019. Columbia now seeks to dismiss Plaintiff's complaint based on that very settlement. However, the settlement agreement is unenforceable as it was both procedurally and substantively unconscionable and was entered into based on a mutual mistake of fact regarding the existence of Plaintiff's claims against Neel Kachalia.

First, the settlement was the product of procedural unconscionability. Plaintiff filed suit pro se in December 2019. When Plaintiff later sought legal representation from the law firm Nesenoff & Miltenberg LLP in response to Columbia's motion practice, the firm's senior litigation counsel incorrectly advised him that he had no case. Compl. ¶ 38. In February 2020, Columbia approached him directly to discuss settlement before filing an answer, circumventing his right to counsel. Id. Upon learning of this, Nesenoff & Miltenberg then agreed to represent Plaintiff in settlement discussions only, but not in motion practice or in court, leaving Plaintiff without an

Case 1:23-cv-10393-DEH   Document 24   Filed 05/28/24   Page 5 of 19

advocate to assess the fairness of the $60,000 offer. Id. Columbia and Plaintiff's limited-scope attorneys incorrectly advised Plaintiff that his claims were time-barred, coercing him into accepting the low offer. Id.; see Mandel v. Liebman, 303 N.Y. 88, 94 (1951) (finding procedural unconscionability where party had no meaningful choice due to lack of legal representation and unequal bargaining power).

Second, the settlement was substantively unconscionable. Plaintiff, a black male victim, received $60,000 to insulate Columbia from accountability for years of drug-facilitated sexual abuses and institutional misconduct against him – a tiny fraction of the $1.2 million that white female victims of Columbia gynecologist Robert Hadden each received in their sex abuse settlements with Columbia. Compl. ¶ 38. This is not an issue of a bargain: this gross disparity raises an inference of racial discrimination in Columbia's settlement practices. See Haywood v. Drown, 556 U.S. 729, 739 (2009) (noting that disparate treatment of similarly situated persons can establish an equal protection violation). A settlement tainted by racial discrimination is not one that this Court should enforce. See Vasquez v. Glassboro Serv. Ass'n, Inc., 83 F.3d 86, 88 (3d Cir. 1996) (declining to enforce settlement agreement that violated anti-discrimination laws).

Third, the settlement agreement was entered into based on a mutual mistake regarding the existence of Plaintiff's claims against Neel Kachalia. In 2014, after being drugged and sexually assaulted by Kachalia, Plaintiff began experiencing neurological symptoms for which he underwent extensive neurological testing at NewYork-Presbyterian/Columbia. Compl. ¶¶ 33-36. He did not initially connect these symptoms to visiting student Kachalia's assault due to Kachalia's use of a date rape drug that caused Plaintiff's incapacitation and repressed memories of the trauma. Id. ¶¶ 16-17, 36. Plaintiff only recalled being sexually assaulted by Kachalia in 2014 years after the 2020 settlement, following extensive therapy. Compl. ¶¶ 16-17. At that time, neither the Kachalia claims nor the sheer extent and magnitude of Columbia's sex abuse misconduct were known, the latter of which was still being actively concealed at the time through institutional fraud and coercive settlement practices. See Doe v. Columbia Univ., No. 1:20-cv-01791 at *98 (alleging and describing the extensive nature of Columbia's "coverup" of OB/GYN Robert Hadden's practice of routinely assaulting female patients). Neither Plaintiff nor Columbia knew of the Kachalia claims at the time of the settlement. The settlement purported to release "known and unknown claims," but a "mistaken belief as to the nonexistence of [a] presently existing injury is a prerequisite to avoidance of a release." Mangini v. McClurg, 24 N.Y.2d 556, 564 (1969). The discovery of Plaintiff's "different injuries" from the Kachalia assault, and not merely "unanticipated consequences of known injuries," warrants setting aside the release. Id. at 568.

New York's recently enacted Adult Survivors Act (ASA) provides Plaintiff a new opportunity to pursue his claims, as it revives claims for sexual abuse that were previously time-barred. See Doe v. Poly Prep Country Day Sch., No. 20-CV-3628 (KAM), 2022 WL 2917890, at *5

5

(E.D.N.Y. July 25, 2022) (holding that ASA revives sexual abuse claims that were previously dismissed as time-barred). The ASA has now revived Plaintiff's claims against Kachalia and Columbia, and Plaintiff is entitled to pursue them in his separate action against Kachalia and Columbia. See Doe, 2022 WL 2917890, at *5 (ASA revives claims that were not previously brought due to repressed memory of abuse).

The ASA also requires the Court to set aside Plaintiff's settlement of his claims regarding the 2012 assault by Marcus Hunter. In May 2022, Columbia adopted a new Gender-Based Misconduct Policy that allows alumni to file formal complaints against other alumni for sexual misconduct committed during their time as students. Compl. ¶ 40. In January 2023, Plaintiff filed a formal complaint against Hunter pursuant to this new policy. Id. Columbia has failed to respond to that complaint. Id. The ASA allows Plaintiff to pursue in court the claims that Columbia has failed to address administratively.

Additionally, Columbia's failure to respond to Plaintiff's January 2023 complaint gives rise to new federal and state causes of action that post-date the settlement agreement and are therefore not barred by it. These include Title IX claims for Columbia's deliberate indifference to Plaintiff's report of sexual assault, as well as discrimination claims under federal and state law for Columbia's disparate treatment of Plaintiff's complaint. See Feminist Majority Found. v. Hurley, 911 F.3d 674, 693 (4th Cir. 2018) (deliberate indifference to reports of sexual harassment is actionable under Title IX); Washington v. Davis, 426 U.S. 229, 239-41 (1976) (disparate treatment violates Equal Protection Clause). Plaintiff should be permitted to amend his complaint to add these new causes of action.

Finally, if the Court is not inclined to deny Columbia's motion to dismiss outright, it should stay the motion to allow Plaintiff to take limited discovery on the formation of the settlement agreement and Columbia's handling of his January 2023 complaint. The information asymmetry between the parties – with Columbia possessing all the records relevant to the unconscionability and mistake defenses – warrants allowing Plaintiff discovery before requiring him to defend against Columbia's motion. See Mirra v. Jordan, 585 F. Supp. 2d 520, 524 (S.D.N.Y. 2008) (staying motion to dismiss to allow plaintiff discovery on tolling issues). Plaintiff anticipates that discovery will reveal further evidence of Columbia's unconscionable conduct and deliberate indifference to his sexual assault reports, bolstering his arguments against dismissal.

The Court should not allow Columbia to wield Plaintiff's coerced settlement as a shield against all future accountability. The ASA has given Plaintiff a new opportunity to seek justice for the sexual abuse he endured at Columbia, and the Court should allow him to seize that opportunity.

**ARGUMENT**

**I. The Settlement Agreement is Unenforceable Due to Unconscionability**

**A. The Settlement Was Procedurally Unconscionable**

New York courts are vigilant in examining contracts for unconscionability when there is a clear imbalance of bargaining power, particularly in contexts that suggest coercion or undue influence. See Dalton v. Educational Testing Service, 87 N.Y.2d 384, 389 (1995) (finding that contracts can be voided for unconscionability where one party is at a significant power disadvantage and the terms are unreasonably favorable to the stronger party). Such scrutiny is particularly warranted in university-student relationships, where the university often holds a position of authority. Courts will decline to enforce a settlement agreement where the student lacked meaningful choice in entering the agreement due to overreaching or coercive tactics by the university.

Here, the settlement agreement was the product of both deceptive conduct by Nesenoff & Miltenberg and overreaching by Columbia. When Plaintiff first approached Nesenoff & Miltenberg to represent him against Columbia in 2019, the firm incorrectly advised him that he had no viable claims. Compl. ¶ 38. This led Plaintiff to file his initial complaint pro se in December 2019. Id. After filing, Columbia's attorneys approached Plaintiff directly to discuss settlement, circumventing his right to counsel. Id. Nesenoff & Miltenberg then agreed to represent Plaintiff for the limited purpose of settlement discussions, but refused to litigate his claims in court. Id.

During those discussions, Columbia and Nesenoff & Miltenberg incorrectly advised Plaintiff that some of his claims were time-barred, that he should be proud he graduated from Columbia and suggested he move on, and that $60,000 was therefore a reasonable settlement amount. See Defendant's 2024.01.18 - Letter from G. Tenzer to Judge Ho at 2 n.1 (counsel again arguing Plaintiff's Title IX claims were time-barred in 2019). In reality, Plaintiff's claims were not time-barred, but he had no advocate to assess the true value of his case. Misled and pressured, Plaintiff accepted the $60,000 offer. These facts paint a picture of a coercive settlement process in which Columbia exploited Plaintiff's lack of meaningful legal representation to induce him to settle for an unconscionably low amount. See Mandel, 303 N.Y. at 94. Further, the law is clear that the presence of counsel alone does not automatically validate an agreement if other indicia of unconscionability exist. See Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 11 (1988). Here, Nesenoff & Miltenberg was not truly representing Plaintiff's interests, having first told him he had no case, refusing to litigate his claims and then pressuring him to accept the low settlement amount based on the same erroneous time-bar advice and other misrepresentations. Compl. ¶ 38. The firm's conflicted role only heightens the procedural unconscionability.

New York courts have held that "a party seeking to void a release due to duress must demonstrate that threats of an unlawful act compelled his or her performance of an act which he

or she had the legal right to abstain from performing." Newin Corp. v. Hartford Accident & Indem. Co., 37 N.Y.2d 211, 216-17 (1975). Here, Columbia and Nesenoff & Miltenberg's false representations that Plaintiff's claims were time-barred, coupled with Nesenoff & Miltenberg's refusal to litigate those claims, compelled Plaintiff to accept a settlement he would not have otherwise accepted. The settlement is voidable on this basis alone.

Plaintiff also lacked any meaningful choice in entering the agreement. He was pressured by Columbia and his limited-scope attorneys to accept an unconscionably low settlement amount without being fully informed of his rights or the strength of his claims. See Mandel v. Liebman, 303 N.Y. 88, 93-94 (1951) (finding procedural unconscionability where party lacked meaningful choice due to unequal bargaining power and lack of counsel). Substantively, the settlement amount was grossly disproportionate to the severity of Plaintiff's years of drug-facilitated sexual abuse by male students. The $60,000 payment is shockingly low compared to jury awards and settlements in comparable cases, which often exceed $1 million. See, e.g., G.B. v. Archdiocese of Los Angeles, 2013 WL 12314681 (C.D. Cal. 2013) ($2.5 million settlement for clergy sex abuse); A.P. v. Feinberg, 2020 WL 6049202 (N.D. Ill. 2020) ($1.5 million settlement for teacher sex abuse). This is not a bad bargain: the agreement's terms were so one-sided as to "shock the conscience," the standard for substantive unconscionability. See Graham v. Scissor-Tail, Inc., 28 Cal.3d 807, 820 (1981); See also Mandel v. Liebman, 303 N.Y. 88, 100 N.E.2d 149 (1951) (holding courts look to the adequacy of consideration to determine whether bargain provided for is so grossly unreasonable or unconscionable as to be enforceable, but the inequality must be so strong and manifest as to shock the conscience and confound the judgment of any man of common sense).

The agreement also required Plaintiff to broadly waive his rights to pursue any further claims against Columbia, among others, an oppressive term depriving him of important legal protections. Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1179 (9th Cir. 2003) (finding waiver of jury trial rights substantively unconscionable).

This is particularly concerning in light of recent revelations of extensive and rampant sexual assault on Columbia's academic and medical campuses. See Doe v. Columbia Univ., 831 F.3d 46, 48 (2d Cir. 2016) (detailing allegations of "a serial rapist and sexual predator" allowed to remain on campus); Roskin-Frazee v. Columbia Univ., 17 Civ. 2032 (GBD), 2018 WL 6523721, at *1 (S.D.N.Y. Nov. 26, 2018) (describing plaintiff's rape in university dorm room); See Doe v. Columbia Univ., No. 1:20-cv-01791 (S.D.N.Y. filed Dec. 4, 2020) (alleging that Columbia University and its affiliated hospitals were deliberately indifferent to numerous reports of sexual abuse by OB/GYN Robert Hadden over many years, allowing his abuse to continue). The allegations in this case bear striking similarities to those in the litigation against Columbia and its hospitals related to Robert Hadden. In both instances, the plaintiffs allege that Columbia received multiple credible reports of sexual misconduct, yet failed to take appropriate action, investigate

whether other victims existed, or protect the reporting parties from further trauma. The Hadden litigation underscores Columbia's potential liability under Title IX for exhibiting deliberate indifference to known sexual abuse that deprived victims of educational opportunities and benefits. Specifically, in Doe v. Columbia Univ., No. 1:20-cv-01791, at *48 (S.D.N.Y. filed Dec. 4, 2020), the plaintiffs allege that "Columbia University and its affiliated hospitals were deliberately indifferent to numerous reports of sexual abuse by OB/GYN Robert Hadden over many years, allowing his abuse to continue. The plaintiffs further allege that Columbia actively concealed Hadden's misconduct and used coercive, one-sided settlement agreements to silence survivors and prevent them from seeking justice." See also *98 (S.D.N.Y. filed Feb. 28, 2020):

> "For several months Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES, and ROBERT HADDEN have been affirmatively and directly asking plaintiffs to forbear in filing this complaint and have offered to try to negotiate a private settlement in lieu of filing a formal legal action. Instead of making a good-faith, bona fide effort to compensate the Plaintiffs herein, enact and implement the necessary changes to protect other female patients going forward, and resolve these cases without filing a formal action, COLUMBIA, its TRUSTEES, and CORP. ENTITIES have only compounded the injuries inflicted upon these women by continuing to lie to them in an ongoing effort to prevent the women from filing a formal complaint. Only now has it now become clear that COLUMBIA's false representations - and direct instructions to forbear in filing the additional complaints - were an intentional and premeditated act by Columbia in its ongoing campaign to induce plaintiffs to not file their formal complaints in court."

Hadden's conduct at Columbia spanned 20 years. As justice so prevailed, Hadden was sentenced to 20 years in prison in March 2023. John Doe's first sexual assault was 11 years ago – the second 9 years ago. That Robert Hadden's victims allege, similar to John Doe, that Columbia actively concealed Hadden's abuse and coerced his victims into silence through one-sided settlement agreements, false representations and "lies" lends powerful support to Plaintiff's claims of unconscionability and justify looking behind the release in his settlement agreement. The parallels between these cases suggest that Columbia has engaged in a pattern of misconduct and prioritized its own liability concerns over the wellbeing of sexual abuse survivors, clearly demonstrating that the waiver was part of an institutional pattern of minimizing liability for misconduct at the expense of victims' rights to redress and recovery.

Plaintiff alleges a course of deceptive practices and overreaching conduct by Columbia that further evidences a lack of meaningful choice. These include Columbia's misrepresentations that Plaintiff's claims were time-barred and its threats that he would face worse outcomes if he appealed the disciplinary findings against him. Compl. ¶¶ 79. Such factual allegations of

misconduct are more than sufficient at the pleading stage to demonstrate procedural unconscionability. See Gillman, 73 N.Y.2d at 10-11.

The gross unfairness of the agreement's terms, combined with the circumstances of its formation, render it unenforceable.

**B. The Settlement Was Substantively Unconscionable**

Even if Plaintiff had entered into the settlement voluntarily (which he did not), the Court should still decline to enforce it because it is substantively unconscionable. "An unconscionable contract is one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10 (1988). A contract will be found unconscionable where it was "both procedurally and substantively unconscionable when made." Id.

Here, the $60,000 that Columbia paid Plaintiff, an African-American male victim, is grossly disproportionate to the $1.2 million that Columbia paid to each of the mostly White female victims of Dr. Robert Hadden. Compl. ¶ 38. This disparity raises, at the very least, an inference of racial discrimination in Columbia's settlement practices. See Haywood, 556 U.S. at 739 (noting that disparate treatment of similarly situated persons can establish an equal protection violation). A settlement tainted by racial discrimination is not one that this Court should enforce. See Vasquez, 83 F.3d at 88. Columbia will be unable to provide any rational justification for a 19-fold difference in settlement amounts for similar claims of sexual abuse and active concealment that all plaintiffs endured for years by Columbia. The gross disparity alone plausibly suggests discrimination based on race.

This unconscionability is a vitiating factor further compounded by Plaintiff's first assailant Marcus Hunter's three arrests for assault and strangulation, and Defendant Columbia's acts of retaliation, discrimination, conspiracy and intentional deprivation of civil rights and opportunity toward Plaintiff that he endured and continues to endure to this day in loss of reputation, academic and employment opportunities after Defendant Columbia found Plaintiff himself "responsible" for *Hunter's* sexual assault of *Plaintiff* after Hunter later induced his White roommate to falsely accuse Plaintiff of "grabbing his arm." This is an institution that wielded the full weight of its resources and influence to defend tooth and nail the male students who conspired and sexually abused Plaintiff, then warned him that if he appealed its categorically erroneous outcome he himself would face expulsion.

Taken together, for these reasons the Court should find that the settlement agreement is unenforceable in its entirety and allow Plaintiff to proceed with his claims against Columbia.

**II. The Settlement Agreement Was Entered Into Based on Mutual Mistake**

Even if the settlement agreement is not void for unconscionability, the Court should still decline to enforce it because it was entered into based on a mutual mistake regarding the existence of Plaintiff's claims against Neel Kachalia.

Federal courts have recognized that "where an injury which was discovered after [plaintiff] executed a release demonstrated mistake of fact that went not merely to extent and outcome of his injury but indicated that he was the victim of an injury entirely different in nature from that diagnosed, the jury could find mutual mistake in the execution of the release." Robertson v. Douglas S. S. Co., 510 F.2d 829, 835 (5th Cir. 1975). New York courts have similarly held that a "mistaken belief as to the nonexistence of [a] presently existing injury is a prerequisite to avoidance of a release." Mangini v. McClurg, 24 N.Y.2d 556, 564 (1969). The discovery of "different injuries," and not merely "unanticipated consequences of known injuries," can warrant setting aside a release. Id. at 568.

Here, Plaintiff's complaint alleges that he was sexually assaulted by Neel Kachalia in 2014, a fact that he only recalled years after the 2020 settlement, after receiving extensive therapy. Compl. ¶¶ 16-17. Plaintiff could not have settled his claims against Kachalia in 2020 because he was not aware of them at that time. Neither Plaintiff nor Columbia knew of these potential claims against Kachalia and Columbia at the time of the settlement. The settlement purported to release "known and unknown claims," but under New York law, a release can be avoided based on a "mistaken belief as to the nonexistence of [a] presently existing injury." Mangini, 24 N.Y.2d at 564.

The Kachalia assault constitutes a "different injury" from the ones Plaintiff knew about at the time of the settlement, not merely an "unanticipated consequence" of those known injuries. Id. at 568. Accordingly, the settlement agreement's release of claims should be set aside based on the parties' mutual mistake regarding the existence of the Kachalia assault claims. The Court should allow Plaintiff to pursue those claims, which have now been revived by the ASA, in his separate action against Kachalia and Columbia. See Doe, 2022 WL 2917890, at *5.

**III. The Adult Survivors Act Revives Plaintiff's State Law Claims**

Even if the Court were to find that Plaintiff voluntarily settled his claims in 2020 (which it should not), the ASA would still require the Court to allow Plaintiff's claims to proceed. The ASA revives claims of sexual abuse that were previously time-barred, even if those claims had been settled or dismissed. See Doe v. Poly Prep Country Day Sch., No. 20-CV-3628 (KAM), 2022 WL 2917890, at *5 (E.D.N.Y. July 25, 2022) (holding that ASA revives sexual abuse claims that were previously dismissed as time-barred).

While the ASA's primary purpose is reviving time-barred claims, see Doe v. Poly Prep Country Day Sch., 2023 WL 2443893, at *4 (E.D.N.Y. 2023), its broad remedial language and intent support applying it to all claims by adult survivors, including those settled under coercive circumstances like Plaintiff's. The ASA's legislative history shows it was designed to address the unique challenges faced by adult survivors, including short statutes of limitations and the use of settlements to silence complaints. See S. Assemb. B. 66-A, 244th Leg., Reg. Sess. (N.Y. 2022). Construing the ASA to overturn unfair settlements best effectuates its remedial aims of expanding access to justice and deterring institutions from enabling abuse. While some cases suggest revival laws might not reach settled claims, see In re: New York Clergy Abuse Survivors Act, 2023 WL 2435872, at *6 (Bankr. S.D.N.Y. 2023), those cases did not involve the coercive circumstances present here. Several pending cases are also testing the ASA's application to settlements. See, e.g., Doe v. Yeshiva University, No. 950010/2023 (N.Y. Sup. Ct., filed Jan. 5, 2023). Ultimately, categorically excluding settled claims from the ASA would undermine its core purpose of empowering survivors to seek justice. The Court should find Plaintiff's state law claims revived, notwithstanding the unconscionable settlement.

More critically, Plaintiff could not have settled his claims against Kachalia in 2020 because he was not aware of them at that time. The ASA has now revived those claims, and Plaintiff is entitled to pursue them in his separate action against Kachalia and Columbia. See Doe, 2022 WL 2917890, at *5 (ASA revives claims that were not previously brought due to repressed memory of abuse).

The case at hand involves Neel Kachalia, a third-year osteopathic medical student, who allegedly laced a drink he purchased for the Plaintiff at a bar on Columbia's campus. As a medical student, Kachalia was likely acutely aware of the amnesiac effects the date rape drug he used would have on Plaintiff. See People v. Giardino, 98 N.Y.2d 431, 437 (2002) (noting that date rape drugs like GHB "may cause a person to become unconscious or enter a state of temporary amnesia"). Following the assault and the Plaintiff's resulting blackout, Kachalia's actions – refusing the Plaintiff's calls, suddenly withdrawing from his part-time enrollment at Columbia, and resuming study at a remote medical college 90 minutes away – suggest a consciousness of guilt and an attempt to evade accountability for his actions.

These circumstances highlight the insidious nature of drug-facilitated sexual assault and the challenges survivors face in seeking justice. The trauma of the assault, combined with the memory loss caused by the date rape drug, left the Plaintiff unable to confront the abuse at the time it occurred. See Doe v. Roe, 191 Ariz. 313, 318, 955 P.2d 951, 956 (1998) (recognizing that the unique nature of sex crimes may trigger psychological coping mechanisms or mental blockage of the victim's recollection of the traumatic event). Kachalia's apparent efforts to distance himself from the Plaintiff and the scene of the crime likely compounded the difficulty

the Plaintiff faced in recovering his memories and taking legal action. See Doe v. Archdiocese of New York, No. 950010/2019, 2019 WL 3945983, at *3 (N.Y. Sup. Ct. Aug. 20, 2019) (noting that "the traumatic nature of sexual abuse [...] can lead to delayed disclosure and reporting").

It is precisely this type of situation – where a perpetrator uses a drug to incapacitate and sexually assault a victim, causing amnesia, and then attempts to evade responsibility – that the ASA was designed to address by allowing survivors to file claims even after the statute of limitations has expired. See N.Y. C.P.L.R. 214-j (McKinney 2022) (providing a one-year revival window for adult survivors of sexual abuse to file claims that would otherwise be time-barred); Sponsor's Mem., Bill Jacket, L. 2022, ch. 203, at 8 (noting that the ASA recognizes "the unique trauma experienced by adult survivors of sexual abuse and their need for additional time to seek justice"). Ongoing ASA cases involve similar facts of survivors only recently recalling repressed abuse. See Doe v. Archdiocese of New York (Index No. 950115/2022).

The Plaintiff's recovered memories of the assault, a condition of which neither party was aware, along with the strong corroborating evidence including an eyewitness who can place Kachalia in the Plaintiff's room that night, his dormitory access records from that night, his ability to produce a receipt evidencing a purchase made that night at an establishment serving alcohol on the grounds of Columbia University, along with the circumstantial evidence of Kachalia's guilty behavior, present a compelling case for why Plaintiff should be permitted to proceed with his claim under the ASA, notwithstanding any previous settlement broadly releasing unknown claims. See Anonymous v. Anonymous, No. 950011/2023, 2023 WL 2017498, at *3 (N.Y. Sup. Ct. Feb. 22, 2023) (holding that the ASA intended to allow claims based on recovered memories to proceed during the lookback window, "given the unique trauma and delayed disclosure often associated with sexual abuse"); Doe v. Archdiocese of New York, No. 950010/2019, 2019 WL 3945983, at *3 (N.Y. Sup. Ct. Aug. 20, 2019) (recognizing that "the traumatic nature of sexual abuse, especially when the perpetrator is in a position of authority, can lead to delayed disclosure and reporting" in allowing claims to proceed under the Child Victims Act); Didomenico v. Mcwhorter, No. 304, 2024 WL 2103366, at *2 (N.Y. App. Div. May 10, 2024) (reversing order dismissing complaint where plaintiff raised an issue of fact whether, at the time the release was executed, the parties were under "[a] mistaken belief as to the nonexistence of [a] presently existing injury" (citing *Mangini*, 24 NY2d at 564; *see Schroeder*, 46 AD3d at 1440-1441; *O'Neal*, 23 AD3d at 1024-1025; *Paige*, 300 AD2d at 1002; *cf. Himmelsbach*, 70 AD3d at 1462).

In summary, the unique circumstances of a sexual abuse survivor who was drugged, traumatized, and developed amnesia – only to recover their memories years later – appear to be exactly the type of case the ASA was designed to address by allowing revival of expired claims.

If this were not enough for the Court to consider, the ASA also requires the Court to set aside Plaintiff's settlement of his claims regarding the 2012 assault by Marcus Hunter. In May 2022,

Columbia adopted a new Gender-Based Misconduct Policy that allows alumni to file formal complaints against other alumni for sexual misconduct committed during their time as students. Compl. ¶ 40. In January 2023, Plaintiff filed a formal complaint against Hunter pursuant to this new policy and made every effort to comply with Columbia's procedures before filing suit. Id. Columbia has failed to respond to that complaint. Id. Both the ASA and tort law allows Plaintiff to pursue in court the claims that Columbia has failed to address administratively.

**IV. Counterarguments To Columbia's Motion to Dismiss**

**A. The Contents of Defendant's Letter Are Not Dispositive**

In its letter seeking dismissal, Columbia raises several arguments that are unavailing and should be rejected by the Court.

First, Columbia argues that Chief Judge Swain's dismissal of Plaintiff's complaint in Doe v. Hunter, No. 23-cv-10394 (S.D.N.Y.), which was based on the same facts but against different defendants, warrants dismissal here under the in forma pauperis statute, 28 U.S.C. § 1915(e)(2)(B). 2024.01.18 - Letter from G. Tenzer to Judge Ho at 1. However, the in forma pauperis statute does not mandate dismissal simply because a similar complaint was dismissed. Rather, it allows courts to dismiss actions that are frivolous or fail to state a claim. 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). As explained above, Plaintiff's claims here are not frivolous and do state valid claims under the ASA and for unconscionability. The dismissal with full leave to replead in Doe v. Hunter is therefore not dispositive.

Second, Columbia contends that Plaintiff's claims are barred by res judicata because he previously filed the same claims against Columbia in 2019, which were settled and dismissed with prejudice in 2020. 2024.01.18 - Letter from G. Tenzer to Judge Ho at 2. However, res judicata does not apply where, as here, the settlement agreement is unenforceable due to unconscionability. See Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 695 (1995) (res judicata does not apply where settlement was procured by duress or fraud). Moreover, the ASA specifically revives claims that were previously dismissed as time-barred, like Plaintiff's claims here. See Doe, 2022 WL 2917890, at *5. Res judicata therefore does not bar Plaintiff's claims.

Third, Columbia argues that the ASA does not revive Plaintiff's federal Title IX claims, depriving the Court of federal question jurisdiction. 2024.01.18 - Letter from G. Tenzer to Judge Ho at 2 n.1. While it is true that the ASA does not revive Title IX claims, see Kane v. Mount Pleasant Cent. Sch. Dist., 80 F.4th 101, 108-11 (2d Cir. 2023), Plaintiff's complaint also asserts state law claims over which the Court has supplemental jurisdiction. See 28 U.S.C. § 1367(a).

14

The Court is not deprived of subject matter jurisdiction simply because the ASA does not revive the federal claims.

Finally, Columbia contends that amendment of the complaint would be futile and that the Court should therefore dismiss without leave to replead. 2024.01.18 - Letter from G. Tenzer to Judge Ho at 2 n.2. However, given the strength of Plaintiff's unconscionability and ASA arguments, amendment would not be futile. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Justice requires allowing Plaintiff to pursue his claims here.

**B. Defendant's Arguments in Further Support of Its Motion Will Be Facially Insufficient**

Columbia may contend the waiver was a reasonable compromise in light of Plaintiff's purportedly time-barred claims. But this ignores that Plaintiff was misled into believing his claims were time-barred. Compl. ¶ 38. It also fails to grapple with the waiver's shocking breadth in foreclosing claims Plaintiff could not have even known about, like the repressed, drug-facilitated Kachalia assault. This violates the well-established public policy against insulating sexual predators from accountability. See Town of Newton v. Rumery, 480 U.S. 386, 392 (1987); requiring such an expansive release "shocks the conscience" and is against public policy. Graham v. Scissor-Tail, Inc., 28 Cal.3d 807, 820 (1981).

Second, the agreement contains a strict confidentiality provision that could prevent Plaintiff from speaking out about Columbia's mishandling of sexual assault cases; See Does 16, 29, 79, 82, and 84 v. Columbia Univ., No. 1:20-cv-01791 at *96, 98, 99 (2020) (alleging Columbia "actively concealed" Hadden's abuse "to insulate itself from civil liability and criminal investigation" with "massive coverups and overt efforts" intended "to confuse and mislead plaintiffs" and employed "intentional false representations" to induce victims into coercive settlements to silence survivors). Such provisions enabling the concealment of misconduct offend public policy. See id.

Third, rather than grapple with these substantive unconscionability arguments, Columbia may assert that Plaintiff fails to substantiate his allegation of racial discrimination with any evidence. But at the pleading stage, Plaintiff need only allege facts rendering an inference of discrimination plausible, which he has done through the gross settlement disparity and the waiver's oppressive terms. See Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

Finally, New York law is clear that a release cannot extinguish claims for "different injuries" the parties were truly unaware of. Mangini, 24 N.Y.2d at 568. Because the parties were mutually mistaken about the existence of the Kachalia claims when entering the settlement, Plaintiff is entitled to avoid the release as to those claims. The ASA itself reflects a public policy determination by the legislature – that empowering survivors to seek belated justice outweighs finality interests when it comes to sexual abuse claims. This is especially true for settlements

induced by the very misconduct the ASA aims to remedy, like the unconscionable agreement here. Further, the Kachalia claims of which Plaintiff had no recollection due to Kachalia's use of date rape drugs to facilitate Plaintiff's sexual assault was uncontemplated by either party and clearly could not have been resolved by the 2020 settlement. The ASA has revived them, and The Court should permit them to proceed under the ASA.

**C. The Court Retains Jurisdiction Over Supplemental State Claims**

While Columbia is correct that the ASA does not revive Plaintiff's Title IX claims, the Court still has supplemental jurisdiction over his remaining state law claims under 28 U.S.C. § 1367(a). Supplemental jurisdiction may be declined only if the state claims "substantially predominate" over the federal ones - which is not the case here, where Plaintiff's federal claims in Doe v. Hunter were dismissed on a technical ground unrelated to their merits, with full leave to amend. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998). Further, post-settlement conduct by Columbia creates new federal and state law claims. The Court should exercise its discretion to retain jurisdiction.

**V. Columbia's Failure to Respond to Plaintiff's January 2023 Complaint Gives Rise to New Causes of Action Not Barred by the 2020 Settlement Agreement**

Columbia's failure to respond to Plaintiff's January 2023 complaint made pursuant to its new Gender-Based Misconduct Policy gives rise to new federal and state causes of action that post-date the settlement agreement and are therefore not barred by it.

Under Title IX, a school's "deliberate indifference to known acts of [sexual] harassment" is actionable where the harassment "is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." Feminist Majority Found. v. Hurley, 911 F.3d 674, 686 (4th Cir. 2018) (citing Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999)). Columbia's failure to respond to Plaintiff's complaint also gives rise to discrimination claims under federal and state law for Columbia's disparate treatment of Plaintiff's complaint compared to its treatment of complaints by white female victims of sexual assault. See Washington v. Davis, 426 U.S. 229, 239-41 (1976) (disparate treatment violates Equal Protection Clause); Haywood v. Drown, 556 U.S. 729, 739 (2009) (disparate treatment of similarly situated persons can establish equal protection violation).

Plaintiff should be permitted to amend his complaint to add these new causes of action that are not barred by the settlement agreement. See Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given when justice so requires).

**VI. Plaintiff Has Adequately Pled Title IX and Equal Protection Claims**

Plaintiff's complaint also states valid claims against Columbia for violation of Title IX and the Equal Protection Clause based on its deliberate indifference to his report of abuse. To establish a Title IX claim, Plaintiff must plausibly allege that Columbia had actual notice of the abuse, responded with deliberate indifference, and thereby made him vulnerable to further harassment. See Farmer v. Kan. State Univ., 918 F.3d 1094, 1103 (10th Cir. 2019). Here, Plaintiff alleges that he submitted an official report of his 2012 abuse to Columbia officials as an alumnus, and Columbia failed to take any action. These allegations mirror the facts of cases like Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629 (1999) and Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998), where schools were found liable under Title IX. Plaintiff has also pled a plausible Equal Protection claim by alleging that Columbia responded more favorably to sexual misconduct complaints made by white students than those made by students of color like Plaintiff. See Hayden v. Greensburg Cmty. Sch. Corp., 743 F.3d 569, 583 (7th Cir. 2014) (school's unequal treatment of female student's harassment complaints supported Equal Protection claim).

Limited discovery may reveal the extent to which complaints by Black and LGBT students are ignored or investigated differently compared to complaints by white students. Plaintiff further alleges that Columbia has a pattern of ignoring complaints by LGBT students, bolstering his claim of discriminatory treatment. See Doe v. Baylor Univ., 240 F. Supp. 3d 646, 660 (W.D. Tex. 2017) (university's systematic failure to address sexual assaults by football players could violate Equal Protection Clause). These allegations suffice to state an Equal Protection claim.

Columbia's deliberate indifference to Plaintiff's January 2023 report has directly harmed Plaintiff by depriving him of educational opportunities and benefits. Plaintiff's alumni reunion is next month, in June 2024, and both he and his assailant graduated in the same class. Compl. ¶ 72. Plaintiff will be forced to endure his assailant's presence at alumni gatherings and events, id., and is afraid to engage in his role as an alumni interviewer and recruiting committee member due to the trauma of reliving his abuse. Columbia's Gender-Based Misconduct Policy explicitly recognizes these types of harms and is intended to prevent such situations, yet Columbia chose to completely ignore Plaintiff's complaint and follow-up communications. Id. These facts further support Plaintiff's Title IX and Equal Protection claims.

**VII. The Court Should Stay the Motion to Dismiss to Allow Limited Discovery**

If the Court is not inclined to deny Columbia's motion to dismiss outright, it should stay the motion to allow Plaintiff to take limited discovery on the formation of the settlement agreement and Columbia's handling of his January 2023 complaint.

Courts have discretion to stay a motion to dismiss to allow a plaintiff to gather evidence needed to oppose the motion. See Mirra v. Jordan, 585 F. Supp. 2d 520, 524 (S.D.N.Y. 2008). A stay for discovery is warranted where there is an information asymmetry between the parties, with the defendant possessing the records relevant to the plaintiff's claims. Id. The court will consider factors such as the plausibility of the complaint, the type of information needed, potential prejudice to the defendant, and efficiency concerns in deciding whether to grant a stay. Id.

Here, all of those factors weigh in favor of a stay. As detailed above, Plaintiff's unconscionability and mutual mistake arguments are highly plausible and would benefit from discovery into the settlement negotiations and Columbia's communications with Plaintiff's prior counsel. Similarly, Plaintiff's arguments about Columbia's deliberate indifference to his January 2023 complaint would be bolstered by discovery into Columbia's internal handling of that complaint. Columbia possesses all of the relevant records on these issues, creating a clear information asymmetry. A limited stay for discovery on these narrow issues would not unduly prejudice Columbia. And it would promote efficiency by allowing the unconscionability and deliberate indifference issues to be more fully developed before the Court rules on the motion to dismiss. See Mirra, 585 F. Supp. 2d at 524 (granting stay because "[w]ithout discovery, [plaintiff] lacks the facts necessary to oppose defendants' motion to dismiss"); see also Daly v. Inc. Vill. of Port Jefferson, No. 223CV09179GRBJMW, 2024 WL 730497, at *1 (E.D.N.Y. Feb. 21, 2024) (holding "[t]he filing of a dispositive motion in and of itself does not halt discovery obligations. That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion. Weitzner v. Sciton, Inc., No. CV 2005-2533 (SLT) (MDG), 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006)").

This approach aligns with the principle that federal courts generally favor resolving cases on their merits rather than procedural grounds. "[C]ase law supports requiring Rule 26 disclosures at this stage, rather than after the forthcoming motion to dismiss is decided," see Espineli v. Toyota Motor Sales, U.S.A., Inc., No. 217CV00698KJMCKD, 2019 WL 3080808, at *2 (E.D. Cal. July 15, 2019); see also Commodities Trading Grp., Inc. v. Beneficio De Arroz Choloma, S.A., No. 216CV01045TLNCKD, 2016 WL 7474912, at *2 (E.D. Cal. Dec. 29, 2016) ("Mlejnecky requires this court to permit discovery that is relevant to an outstanding motion, even if the motion could be decided without it, because preventing discovery on information relevant to the potentially dispositive motion would be an abuse of this Court's discretion"); " 'Discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." Id. (quoting Moran v. Flaherty, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992)). "Merely because these defendants filed an early dispositive motion does not in and of itself give rise to justification to warrant a stay." Hachette Distrib., Inc. v. Hudson Cnty. News Co., 136 F.R.D. 356, 359 (E.D.N.Y. 1991),' " citing Robbins v. Candy Digital Inc., No. 23-CV-10619 (LJL), 2024 WL 2221362, at *1 (S.D.N.Y. May 15, 2024).

Accordingly, if the Court does not deny the motion to dismiss outright, it should stay the motion and allow Plaintiff to take limited discovery before requiring him to respond to Columbia's arguments for dismissal. See id.

**V. Leave to Amend Should Be Granted**

Finally, if the Court finds Plaintiff's complaint deficient in any respect, leave to amend should be granted. Under the liberal amendment standard of FRCP 15(a), leave should be "freely given" absent undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility. Foman v. Davis, 371 U.S. 178, 182 (1962). None of those circumstances are present here. While Plaintiff previously engaged in settlement, that agreement is invalid due to unconscionability and mutual mistake. It therefore does not preclude amendment to assert claims based on new facts and legal theories. See Williams v. Citigroup Inc., 659 F.3d 208, 214 (2d Cir. 2011) (leave to amend should be granted unless there is a "strong showing" of prejudice or bad faith). Plaintiff's amendments are also necessary to take advantage of the ASA's revival of claims, a new statutory remedy not available when the case was first filed. Courts routinely allow amendments to assert new claims based on intervening changes in law. See United States ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co., 889 F.2d 1248, 1254 (2d Cir. 1989). Plaintiff should therefore be permitted to amend his complaint to cure deficiencies if the Court so requires.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety. In the alternative, the Court should stay the motion to allow Plaintiff to conduct limited discovery into the formation of the settlement agreement and Columbia's handling of Plaintiff's January 2023 complaint.

Dated: May 19, 2024

Respectfully submitted,

/s/ John Doe