**PLAINTIFF'S RESPONSE IN OPPOSITION
TO THIRD-PARTY MOTION TO UNSEAL**

Dear Judge Ho,

I write in strong opposition to Professor Eugene Volokh's motion to intervene and unseal the complaints in Doe v. Columbia, 1:23-cv-10393-DEH and Doe v. Kachalia, 1:23-cv-10395-DEH. While I respect Professor Volokh's academic interest in these cases, unsealing the complaints at this stage would severely prejudice my privacy rights and jeopardize my safety, with potentially catastrophic consequences. The Court should deny Professor Volokh's motion for several compelling reasons.

First and foremost, this Court has already carefully considered the privacy interests at stake and determined that pseudonymity is necessary to protect my identity as a sexual assault victim. See Columbia Dkt. 6 at 2; Kachalia Dkt. 6 at 2. The Court recognized the highly sensitive and personal nature of the allegations in the complaints and the risk of harm if my name were publicly disclosed. Id. Professor Volokh's motion disregards the Court's reasoned decision to grant pseudonymity and fails to establish any changed circumstances warranting reconsideration of that order.

Courts have long recognized the importance of protecting the identities of sexual assault victims, even when they proceed anonymously. See, e.g., Doe v. Colgate Univ., 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) (allegations that victim suffered sexual assault constitute highly sensitive and personal information justifying her proceeding under a pseudonym); Doe v. Townes, 2020 WL 2395159, at *6 (S.D.N.Y. May 12, 2020) (collecting cases). That is because sexual assault victims face a serious risk of retaliation, stigma, and mental health trauma if their identities are revealed. See Doe v. Skyline Autos. Inc., 375 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (noting sexual assault victims face the risk of stigmatization, retaliation, and further psychological trauma if their identities are disclosed). I have documented the severe mental health impacts I have suffered as a result of the assaults, including suicidal ideation requiring ongoing treatment. Unsealing the complaints detailing my abuse would likely trigger a relapse of these symptoms and retraumatize me all over again. See Doe v. Colgate Univ., 2016 WL 1448829, at *3 (allowing sexual assault victim to proceed anonymously based on allegations of mental health issues, including a suicide attempt). No academic interest can justify inflicting such serious harm.

Moreover, Professor Volokh's reliance on the presumption of public access to judicial records is misplaced here, where the Court has already found that my privacy interests outweigh that presumption. See Doe v. Townes, 2020 WL 2395159, at *5 (holding a plaintiff's privacy interest is a compelling reason to limit public access in sexual assault cases). Redacting my name would

be insufficient to protect my privacy, as "the public filing of a complaint containing detailed allegations of sexual assault, even with names redacted, can still lead to exposure of the plaintiff's identity." Id. at *6. The complaints contain highly sensitive details about the assaults I suffered that could be used to identify me based on information already in the public domain. Professor Volokh fails to acknowledge the serious risk of retaliation and invasion of privacy I would face if the complaints were unsealed, even in redacted form.

That risk is especially acute here given the prior public exposure of my assailant Marcus Hunter's identity based on a *mere footnote* in an unrelated case. In 2015, the website Gotnews.com was able to identify my assailant by name using only the details that he was a black male in a certain fraternity at Columbia, see Nungesser v. Columbia University, et al., No. 1:15-cv-03216-GHW, [ECF 1] at 13 n.11 (S.D.N.Y. filed Apr. 23, 2015); See also **Exhibit 1 "BREAKING: We Found "Adam" Of The Columbia Fake Rape Hoax - GotNews.com"** (attached). The article included Mr. Hunter's name, photos, and personal information taken from his social media accounts. Id. Even more troublingly, the Gotnews.com article was further publicized on AutoAdmit.com, a popular law school admissions forum, where users posted links to Hunter's social media accounts and  labeled him a "FagRape Liar"; See **Exhibit 2 "CCJohnson outs Columbia fake FagRape Liar: Marcus Hunter | AutoAdmit.com"** (attached). While this leaked information was helpful in corroborating the facts in my complaint[1], it also shows the devastating real-world consequences of having one's identity publicly revealed as either a perpetrator or victim of sexual assault. I should not have to risk subjecting myself to similar exposure, harassment and deleterious mental health effects by unsealing the sensitive details in my complaint.

As in Nungesser v. Columbia University, the detailed nature of these allegations themselves could lead to the identification of the plaintiff, even if names are redacted. This is because the context and specifics of the allegations may be enough to identify the individuals involved and cause acute, irreparable and foreseeable harms including but not limited to harms intentionally or unintentionally caused by motivated internet bloggers; see United States v. Amodeo, 71 F.3d 1044, 1051 (2d Cir. 1995) ("As the Supreme Court noted in Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), courts have the power to insure that their records are not "used to gratify private spite or promote public scandal," and have "refused to permit their files to serve as reservoirs of libelous statements for press consumption." Id. at 598, 98 S.Ct. at 1312 (internal quotation marks and citation omitted) (collecting cases); see also Stevenson v. News Syndicate Co., 276 A.D. 614, 96 N.Y.S.2d 751, aff'd, 302 N.Y. 81, 96 N.E.2d 187 (2d Dep't 1950)").

---

[1] See Nungesser v. Columbia University, et al., No. 1:15-cv-03216-GHW, [ECF 10] at 30, 31 (S.D.N.Y. filed May 14, 2015) (Plaintiff recounting Columbia's finding that "[Marcus Hunter's] complaint *[against white male student]* was riddled with inconsistencies" [...] and alleging he was encouraged by [his female friend] to file the false complaint).

I bring to the court's attention that Professor Volokh's Dean at the UCLA Law School has issued a public apology to the law community for his derogatory use of the "n-word" both in class and outside of class, suggesting his First Amendment interpretations offline and online may cause harm.[2] Further, the United States Court of Appeals for the First Circuit recently issued a decision in Doe v. Town of Lisbon affirming the district court's exercise of discretion in denying Volokh's motion to unseal and oppose pseudonymity, stating "Professor Volokh's interest in learning the plaintiff's real name so he can, in his words, "effectively" research the plaintiff's "past cases or controversies" and gain "important context" about the case therefore does not outweigh the strong public interest in preserving at least temporary anonymity" see Doe v. Town of Lisbon, No. 1:21-CV-944-JL, 2022 WL 2274785, at *6 (D.N.H. June 23, 2022), aff'd, 78 F.4th 38 (1st Cir. 2023). I add that the very same website for which Volokh writes (reason.com) is *the very same website* that ran a story interviewing Marcus Hunter as "Adam"[3] and publicly airing his false allegations against white male student Nungesser where Columbia categorically found Hunter "giggling" and "not credible," which led to his being named in Nungesser's amended complaint against Columbia as John Doe #2 with a link to the reason.com article in a footnote **(see Exhibit 3).**

Professor Volokh's status as an academic does not entitle him to access sealed judicial records that implicate such highly sensitive privacy interests. While courts have recognized a "qualified right of access" for the press and public to judicial documents, that right is not absolute and must yield to countervailing privacy concerns. See Newsday LLC v. County of Nassau, 730 F.3d 156, 163 (2d Cir. 2013). Professor Volokh's general interest in writing about Title IX cases does not overcome the acute privacy and safety risks presented here. See United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) ("[T]he privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation."); see also Doe v. Colgate Univ., No. 5:15-CV-1069 (LEK/DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) (holding that, at an early stage of litigation, Plaintiff's privacy interest outweighs the presumption of public access to judicial documents and sealing the complaint to preserve Plaintiff's anonymity and protect her from further psychological harm), see also Doe v. Townes, No. 19 Civ. 8034 (ALC), 2020 WL 2395159, at *6 (S.D.N.Y. May 12, 2020) (holding sealing of complaint necessary to protect

---

2

*https://reason.com/volokh/2020/04/14/ucla-law-dean-apologizes-for-my-having-accurately-quot ed-the-word-nigger-in-discussing-a-case/*

[3] Mr. Hunter has a demonstrated pattern of hiding behind other people, institutions and names to avoid accountability. As Plaintiff stated in his complaint, Hunter both employed his white roommate to launch false allegations against Plaintiff to cover up his conduct, and more recently changed his Twitter, Instagram and other social media accounts to *Plaintiff's name*, a fact his mother Beverly Hunter believed was a marijuana-induced "alter-ego" that Mr. Hunter reverted to before "assaulting," "strangling," "dragging" her throughout her apartment and beating her to a "bloody" pulp, as noted in her letter to a Los Angeles Superior Court Judge requesting an eviction and order of protection from him.

Plaintiff's identity and confidential personal information, and finding that these privacy interests are sufficient to overcome the presumption of public access to the complaint.); see also Doe v. Smith, 105 F. Supp. 2d 40, 44 (E.D.N.Y. 1999) (noting a strong public interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes). These four cases recognize that where a plaintiff is proceeding anonymously, especially in sensitive matters like drug-facilitated sexual assault, courts should restrict access to sealed filings to protect the plaintiff's anonymity and prevent further trauma. In light of ongoing psychiatric treatment, unsealing would cause severe emotional distress to a point at which I could not pursue the current legal process and would suffer severe risk to my safety and survival. The privacy interests in these circumstances outweigh the presumption of public access. In this matter involving this university and these specific and flagrant abuses, and with this notorious assailant under such extraordinary circumstances, there is not available a more narrowly tailored method of protecting Plaintiff's overriding privacy and mental health interests.

Finally, Professor Volokh's motion is premature, as this litigation is still in its early stages. If the complaints are unsealed now, the damage to my privacy will be done even if I ultimately prevail on the merits. See Mirlis v. Greer, 952 F.3d 36, 42 (2d Cir. 2020) (holding that a district court can reasonably determine that the privacy interests at stake in a sexual abuse case support sealing during the pretrial stages of litigation). The Court should maintain the status quo of pseudonymity until the parties have had an opportunity to fully litigate the merits of my claims.

In conclusion, Professor Volokh's motion to unseal the complaints should be denied to protect my compelling privacy and safety interests as a victim of sexual assault. The limited value of public access at this early stage of the litigation is far outweighed by the severe harm and trauma that unsealing would cause. I respectfully ask the Court to maintain the confidentiality of these highly sensitive proceedings.

I thank the court for its attention to this matter.

Sincerely,

/s/ John Doe

# EXHIBIT 1

The Wayback Machine - https://web.archive.org/web/20180119185830/http://gotnews.com:80/breaking-we-found-adam-of-the-columbia-fake-rape-hoax/

☰    🔍

# BREAKING: We Found "Adam" Of The Columbia Fake Rape Hoax

MAY 23, 2015 by **charles c. johnson**    26    ✎

Facebook    Twitter    Reddit    E-mail    SMS





"ADAM" A.K.A. MARCUS HUNTER

Gotnews.com has identified the "Adam" of the Columbia fake rape story: Marcus





The lion's share of the funds required to run this website comes from donations. Please support independent journalism. If you'd like to hire our research team, email us at

TIPS@GOTNEWS.COM    .

Hunter.

We gave "Adam" until 7 PM PST to apologize to Paul Nungesser for falsely accusing him of sexual assault.

https://twitter.com/ChuckCJohnson/status/601905930217738240

That deadline has now passed,

On May 6, 2015, Jezebel mentioned the existence of a fourth male "victim" of Paul Nungesser.

> Adam, **who identifies as "queer and black,"** didn't tell anybody about the incident until months later. His silence, he says, was due to issues that face many male survivors of sexual assault—denial, fear that nobody would believe him, fear that even defining himself as a survivor would somehow damage others.

Earlier this week feminist writer Cathy Young exposed that "Adam"'s story was also made up.

> So I take it this http://t.co/m0gUymeD4y is @jezebel's response to their "male victim of Nungesser" being a bust http://t.co/GlQb8HE8uR
>
> — Your Sarcastic Wench (@CathyYoung63) May 22, 2015

We contacted Young who didn't want to ID Adam (alas! can't win 'em all!) and so we decided to do some sleuthing on our own.

Young provided these two key details in her article:

> Adam did have a corroborating witness of sorts: a woman who had held a governing position in a fraternity to which both he and Nungesser had belonged—Alpha Delta Phi, a coed Greek organization with an intellectual and literary bent. This woman confirmed that during the 2012/2013 academic year, she heard a rumor that Nungesser had "engaged in sexually inappropriate behavior" toward Adam; she said she had questioned Adam about it and written a report based on his verbal statement. The report, an undated Word document she had saved on her computer, added more inconsistencies to Adam's account; among other things, it placed the alleged misconduct in February 2012 rather than November 2011.

The person who claimed to be sexually assaulted was a member of Alpha Delta Phi and that the alleged assault took place sometime between November 2011 and February 2012.

There aren't too many people who are members of Alpha Delta Phi, black, and gay.

Running through potential matches, we came to Marcus Hunter.

That brought us to Hunter's tumbr accounts.



Tweets by BasedOps

Tumblr:
http://negratude.tumblr.com/
and
http://negrotude.tumblr.com/

The first one (negratude) is important because it dates back to October 2010. We focused on November 2011 through February 2012. The two time periods "Adam" claimed the sexual assault occurred. This one is from FEB 26th. The 2nd paragraph of this entry stood out:



> A few weeks ago, a friend who I hadn't seen since returning from holiday and I had dinner, shared a drink, and caught up. We reminisced and dwelled on a mutual state of weirdness. Our fairly large friend group, though still physically intact, is symbolically fractured; we're both braced for winter; our workloads are on one hand engaging, and on the other completely alienating and uninspiring. No longer is either of us interested in pursuing the same kinds of enjoyable yet completely emotionally and intellectually unsatisfying relationships we felt pressure to maintain last term. With the isolation of winter vacation came introspection and a healthy bit of metanoia, a concomitant of being both an angst-ridden, educated teenager as well as a critically engaged citizen. With freshness comes breaking away from the old: "Every seed destroys its container or else there would be no fruition." Our cages are the stifling limitations of a pseudo-liberal intellectual environment, the yoke of defying racial stereotypes, the expectations of our parents, the expectations we place on ourselves. Expectation loaded with cultural stigma is the progenitor to self-doubt: its motive is neutralizing, anesthetizing, and, further, silencing. (The most is archived here: https://archive.is/EuPsh)

The date of this post is February 2012. We believe it describes the evening he spent with Paul Nungesser.

We've analyzed his postings dating back to high school. Frankly Hunter is not the type to let an unwanted sexual assault slide. He's been a self proclaimed militant black/feminist/queer/trans activist since at least the 10th grade. It's hard to believe he'd let an assault happen without a peep.

This gives credence to the claim of Nungesser's lawyers that Hunter schemed with Emma Sulkowicz and others to tar Nungesser.

Hunter shows an interest in Emma Sulkowicz's fake rape hoax, according to his Tumblr and Twitter profiles.




y
n, he also
experiences
own, for on
the latter
great detail
love, he
ask: 'What
se Arcadio
reply: 'It's
."

"I'm not sure if
poetry as healir
so much as I be

poetry
as chicken neck
meat,
poetry as fishin
baiting you out

HUNTER USES THE HASHTAG #SOLIDARITY AND
#PROUD

 sigourney retweeted
 **i-D** @i_D · May 19
Emma Sulkowicz graduated from Columbia today with her mattress to
protest sexual assault: bit.ly/1Kiw0YP



↩    ⟲ 211    ★ 244    ⊕    •••

Here's Hunter's other material.

Instagram:
https://instagram.com/negratude_/
Lots of posts and people to link from here.
Etsy:
https://www.etsy.com/people/negrotude?ref=owner_profile_leftnav
Flavorwire:
http://flavorwire.com/author/mjh2181/
Pop culture articles I haven't looked at.

LastFM:
http://www.last.fm/user/Blueschlub#_=_
StumbleUpon:

http://www.stumbleupon.com/stumbler/Blueschlub

Vizzed.com (confirms DOB)
http://www.vizzed.com/boards/profile.php?id=211292

School Profile and Archive:
http://iraas.columbia.edu/users/marcus-hunter
https://archive.is/4omTx

Hootmag Profile

> CU Closets: Marcus Jeremy Hunter, CC 2015

Interviewed in school paper
http://features.columbiaspectator.com/eye/2014/11/06/studying-while-black/

We reached out to Hunter here:

https://twitter.com/ChuckCJohnson/status/601988561571696640

He reciprocated by blocking:



HUNTER WOULD PREFER TO BLOCK US THAN TO ENGAGE.



MARCUS HUNTER STICKS HIS TONGUE OUT. (TWITTER)

Facebook        Twitter        Reddit        E-mail        SMS

FILED UNDER: EDUCATION  FRAUD  NEWS  POLITICS  RACE
TAGGED WITH: CATHY YOUNG  COLUMBIA UNIVERSITY  EMMA SULKOWICZ  FAKE RAPE  JEZEBEL  MARCUS HUNTER
REASON MAGAZINE  SJWS  UNIVERSITY OF VIRGINIA



### About Charles C. Johnson

Gotnews.com founder and editor-in-chief Charles C. Johnson is an investigative journalist, author, and sought after researcher. He was a contributor to the Daily Caller and the Blaze, and his work is frequently featured on Drudge Report. He is author of Why Coolidge Matters: Leadership Lessons from America's Most Underrated President and The Truth About the IRS Scandal. Charles is an award-winning journalist who has also written for Wall Street Journal, New York Post, Los Angeles Times, American Spectator, Daily Beast, National Review Online, PJ Media, and Weekly Standard. Charles has appeared on Fox News with Megyn Kelly, Sean Hannity, and Lou Dobbs and numerous radio programs, including Rusty Humphries, Dennis Prager, Larry Elder, and Mark Levin. He is at work on a new book about the researcher community and Barack Obama.

Disqus seems to be taking longer than usual. Reload?

RESOURCES

About GotNews
Videos
Research Tips
Contact

SECTIONS

News
Opinion
Culture

TOPICS

Donald Trump
Censorship
Democratic Party
ISIS
wikileaks

DONATE

Please support
independent
journalism.





©2018; GotNews, LLC. ·

# EXHIBIT 2

\



**CCJohnson outs Columbia fake FagRape Liar: Marcus Hunter**

📄 http://gotnews.com/breaking-we-found-adam-of-the-columbia-fa...        Big idiotic hominid        05/24/15

📄 Poast new message in this thread

---

⚪ Top   ⚪ Reply                                                      ⭐ Favorite

**Date:** May 24th, 2015 5:27 PM
**Author:** Big idiotic hominid

http://gotnews.com/breaking-we-found-adam-of-the-columbia-fake-rape-hoax/

Gotnews.com has identified the �Adam� of the Columbia fake rape story: Marcus Hunter.

We gave �Adam� until 7 PM PST to apologize to Paul Nungesser for falsely accusing him of sexual assault.

I'm giving "Adam" until 7 PM to apologize to #PaulNungesser & then I'll publish his name for lying about rape. Cc: @teoarmus #EmmaSulkowicz

� Charles C. Johnson (@ChuckCJohnson) May 23, 2015

That deadline has now passed,

On May 6, 2015, Jezebel mentioned the existence of a fourth male �victim� of Paul Nungesser.

Adam, who identifies as �queer and black,� didn�t tell anybody about the incident until months later. His silence, he says, was due to issues that face many male survivors of sexual assault�denial, fear that nobody would believe him, fear that even defining himself as a survivor would somehow damage others.

Earlier this week feminist writer Cathy Young exposed that �Adam��s story was also made up.

http://t.co/GlQb8HE8uR

We contacted Young who didn�t want to ID Adam (alas! can�t win �em all!) and so we decided to do some sleuthing on our own.

Young provided these two key details in her article:

Adam did have a corroborating witness of sorts: a woman who had held a governing position in a fraternity to which both he and Nungesser had belonged�Alpha Delta Phi, a coed Greek organization with an intellectual and literary bent. This woman confirmed that during the 2012/2013 academic year, she heard a rumor that Nungesser had �engaged in sexually inappropriate behavior� toward Adam; she said she had questioned Adam about it and written a report based on his verbal statement. The report, an undated Word document she had saved on her computer, added more inconsistencies to Adam�s account; among other things, it placed the alleged misconduct in February 2012 rather than November 2011.

The person who claimed to be sexually assaulted was a member of Alpha Delta Phi and that the alleged assault took place sometime between November 2011 and February 2012.

There aren�t too many people who are members of Alpha Delta Phi, black, and gay.

Running through potential matches, we came to Marcus Hunter.

That brought us to Hunter�s tumbr accounts.

Tumblr:

http://negratude.tumblr.com/

and

http://negrotude.tumblr.com/

The first one (negratude) is important because it dates back to October 2010. We focused on November 2011 through February 2012. The two time periods �Adam� claimed the sexual assault occurred. This one is from FEB 26th. The 2nd paragraph of this entry stood out:

A few weeks ago, a friend who I hadn�t seen since returning from holiday and I had dinner, shared a drink, and caught up. We reminisced and dwelled on a mutual state of weirdness. Our fairly large friend group, though still physically intact, is symbolically fractured; we�re both braced for winter; our workloads are on one hand engaging, and on the other completely alienating and uninspiring. No longer is either of us interested in pursuing the same kinds of enjoyable yet completely emotionally and intellectually unsatisfying relationships we felt pressure to maintain last term. With the isolation of winter vacation came introspection and a healthy bit of metanoia, a concomitant of being both an angst-ridden, educated teenager as well as a critically engaged citizen. With freshness comes breaking away from the old: �Every seed destroys its container or else there would be no fruition.� Our cages are the stifling limitations of a pseudo-liberal intellectual environment, the yoke of defying racial stereotypes, the expectations of our parents, the expectations we place on ourselves. Expectation loaded with cultural stigma is the progenitor to self-doubt: its motive is neutralizing, anesthetizing, and, further, silencing. (The most is archived here: https://archive.is/EuPsh)

The date of this post is February 2012. We believe it describes the evening he spent with Paul Nungesser.

We�ve analyzed his postings dating back to high school. Frankly Hunter is not the type to let an unwanted

sexual assault slide. He�s been a self proclaimed militant black/feminist/queer/trans activist since at least the 10th grade. It�s hard to believe he�d let an assault happen without a peep.

This gives credence to the claim of Nungesser�s lawyers that Hunter schemed with Emma Sulkowicz and others to tar Nungesser.

Hunter shows an interest in Emma Sulkowicz�s fake rape hoax, according to his Tumblr and Twitter profiles.

Here�s Hunter�s other material.

Instagram:

https://instagram.com/negratude_/

Lots of posts and people to link from here.

Etsy:

https://www.etsy.com/people/negrotude?ref=owner_profile_leftnav

Flavorwire:

http://flavorwire.com/author/mjh2181/

Pop culture articles I haven�t looked at.

LastFM:

http://www.last.fm/user/Blueschlub#_=_

StumbleUpon:

http://www.stumbleupon.com/stumbler/Blueschlub

Vizzed.com (confirms DOB)

http://www.vizzed.com/boards/profile.php?id=211292

School Profile and Archive:

http://iraas.columbia.edu/users/marcus-hunter

https://archive.is/4omTx

Hootmag Profile

http://www.hootmag.org/blog/2012/03/06/cu-closets-marcus-jeremy-cc-2015/

Interviewed in school paper

http://features.columbiaspectator.com/eye/2014/11/06/studying-while-black/

We reached out to Hunter here:

.@negratude Do you have a comment for falsely accusing #PaulNungesser of sexual assault?

� Charles C. Johnson (@ChuckCJohnson) May 23, 2015

He reciprocated by blocking:

(http://www.autoadmit.com/thread.php?thread_id=2888313&forum_id=2#27955887)

# EXHIBIT 3



FREE MINDS AND FREE MARKETS

CULTURE

# As Another Accusation Bites the Dust, Columbia Rape Saga Takes New Turn

The accused now takes his case to the civil courts

**CATHY YOUNG** | 5.20.2015 10:20 AM

   



YouTube screen capture

This week's graduation at Columbia University caps the bizarre, often sordid saga involving the two most famous members of the Class of 2015: Emma Sulkowicz, the activist who protested the school's alleged mishandling of her alleged rape by carrying a mattress around campus, and Jean-Paul Nungesser, the German scholarship student she accuses of raping her. On Tuesday, Sulkowicz carried her mattress across the stage at Class Day, despite half-hearted attempts by Columbia officials to enforce a regulation against bringing "large objects" into the ceremonial area—and despite the fact that the "mattress performance" was for a senior visual arts thesis she had already completed. Her activism was also lauded (with no mention of her name) by two commencement speakers, Los Angeles Mayor Eric Garcetti and United Nations Ambassador Samantha Power.

This isn't quite the end of the story: Nungesser is suing Columbia, university president Lee Bollinger, and Sulkowicz's thesis supervisor for allowing him to be subjected to "gender-based harassment" which severely damaged his educational experience and future prospects, even though a campus panel found him not culpable on the sexual assault charge. Meanwhile, there is new information related to one of this story's many strange twists: another sexual assault complaint brought against Nungesser late last year by a male classmate. The charge was made public in February, on the heels of my article in *The Daily Beast* questioning the pro-Sulkowicz narrative.

Now, I have learned that after a hearing in late April, Nungesser was found "not responsible" in this latest case—altogether, the fourth time he has been cleared of a sexual assault charge at Columbia. When Sulkowicz first went

public a year ago, the fact that her alleged attacker was still on campus and had never been subjected to any formal sanctions despite being accused of sexual assault by three different women helped fuel the outrage. Yet the latest investigation strongly supports Nungesser's claim, made in media interviews and in his lawsuit, that the multiple complaints were not independent of each other and may have been part of a vendetta stemming from the original charge by Sulkowicz.

Several days after my *Daily Beast* piece, which featured not only Nungesser's account of his relationship with Sulkowicz but social media messages tending to support his version, the feminist blog *Jezebel* ran a purported rebuttal titled "How to Make an Accused Rapist Look Good." Much of the story, by *Jezebel* editor Erin Gloria Ryan, dealt with Sulkowicz's not entirely convincing explanation of her friendly messages to Nungesser days after what she says was a terrifyingly violent rape. But the piece also contained a new revelation meant to bolster the claim that Nungesser was a serial sexual predator: the existence of a hitherto unknown male victim, identified by the pseudonym "Adam."

Adam, who also graduates this week, told *Jezebel* that "he was close friends with Paul during his freshman year in 2011" and that "one fall night, in the midst of an emotional conversation in Paul's dorm room…Paul pushed him onto his bed and sexually assaulted him." He claimed that after much self-doubt and internal struggle, he finally reported this incident, first to a student society to which both he and Nungesser belonged and then in a formal complaint to the university in the fall of 2014. Adam rather melodramatically lamented that my *Daily Beast* piece "invalidates and completely erases [his] experience." It should be noted that, as accuser and accused in a sexual misconduct case, both Adam and Nungesser had presumably received the usual instructions from the university to "make all reasonable efforts to maintain the confidentiality/privacy of the involved parties."

About three weeks prior to graduation, the hearing panel made its decision. It found for Nungesser. As is now the norm in campus sexual misconduct proceedings, the charge was considered under the "preponderance of the evidence" standard. Thus, Adam could not meet the very complainant-friendly burden of showing that it was even slightly more likely than not that the offense was committed. Since there was no appeal, the case is over, and as far as Nungesser's formal record at Columbia is concerned he is entirely in the clear.

**LATEST**

### No, Vivek Ramaswamy, a Libertarian-Nationalist Alliance Doesn't Make Sense

ERIC BOEHM | 5.25.2024 1:00 PM

### Craft Distilleries Fight for Survival Amid Crushing Regulations

C. JARRETT DIETERLE | 5.25.2024 7:00 AM

### AI Is Coming for Hollywood's Jobs

PETER SUDERMAN | FROM THE JUNE 2024 ISSUE

### *Super Size Me* Was Not Groundbreaking Journalism

BILLY BINION | 5.24.2024 5:30 PM

### Trump's Mass Deportation Plan Is Anti-American

FIONA HARRIGAN | 5.24.2024 5:15 PM

Nungesser declined to be interviewed for this story, due to concerns that statements to the media might affect his lawsuit. However, through a source close to the case, I was able to review several documents related to Adam's complaint—including, crucially, the report prepared by a two-person Title IX investigative team.

The gist of the complaint was that in November 2011, Adam, who lived in the same dorm as Nungesser and was part of the same social circle, went to Nungesser's room to tell him he was upset about being "caught in the middle" of relationship drama between Nungesser and his then-girlfriend. (This girlfriend later became one of Nungesser's accusers, known in several media accounts under the pseudonym "Natalie"; she claimed that Nungesser had psychologically and sexually abused her throughout their relationship. The case was eventually closed after she stopped cooperating.)

According to Adam, during this conversation Nungesser asked him to sit on the bed, rubbed his shoulder and back, then "gently" pushed him down and proceeded to stroke his leg and finally massage his crotch "for approximately 2-3 minutes" while Adam froze in shock. He was finally able to muster the will to get up and leave.

Adam told investigators that he spoke to Nungesser's girlfriend about this; however, he didn't seem to remember when, or what her reaction was. At one point, he said that he "assumed" he had told her immediately afterward, and "it wasn't until months later that I realized that I had not and she was unaware." He also claimed that he avoided Nungesser after the alleged assault, and that Nungesser eventually texted him and then messaged him on Facebook; according to him, Nungesser was upset with him for telling Natalie about their sexual contact, but also suggested that they get together for coffee.

Nungesser's story was quite different. He said that he confided in Adam about his and Natalie's relationship troubles, that there was no sexual contact of any kind, and that later on he was dismayed to learn that Adam had recounted their conversation to Natalie.

The Facebook exchange, which Adam himself eventually found and turned over to the investigators, did not exactly help his story. Far from showing avoidance of Nungesser, it showed Adam seeking him out, complaining that "our friendship has been negatively affected" by Nungesser's relationship problems and that "we're less close/you're preferring it that way." It also showed Nungesser saying, "It was obviously pretty hard for me when I found out that you shared my entire conversation that I had with you with [Natalie], because I had assumed that it was confidential."

The investigators' report noted numerous contradictions in Adam's account, as well as its drastic discrepancy with the Facebook record. Nungesser's account, on the other hand, was not only consistent but matched by corroborative evidence. Adam's credibility was further sunk by his rather fanciful complaints of "retaliation" by Nungesser in a class they shared. These "deliberately aggressive acts" consisted of sitting too close to Adam or to his friends, which left Adam "distraught and traumatized," and complimenting some points Adam had made in a class discussion (which "felt like he was claiming a collective sense of power"). I am happy to report that, even on the trauma-happy modern campus, such claims of harassment are still recognized as, in the words of the report, "hyperbolic and illogical."

In the end, the investigators concluded that Adam was "unreliable" and that his story simply did not add up, and recommended that Nungesser be found "not responsible." But there is another fascinating wrinkle to the story.

Adam did have a corroborating witness of sorts: a woman who had held a governing position in a fraternity to which both he and Nungesser had belonged—Alpha Delta Phi, a coed Greek organization with an intellectual and literary bent. This woman confirmed that during the 2012/2013 academic year, she heard a rumor that Nungesser had "engaged in sexually inappropriate behavior" toward Adam; she said she had questioned Adam about it and written a report based on his verbal statement. The report, an undated Word document she had saved on her computer, added more inconsistencies to Adam's  account; among other things, it placed the alleged misconduct in February 2012 rather than November 2011.

The record leaves virtually no doubt that this witness is the same ADP officer —I'll call her Leila—who played a fairly important supporting role in the case against Nungesser in the spring and fall of 2013. As I reported in *The Daily Beast*, after learning about the complaint brought by Sulkowicz in late April of that year, Leila sent out an email on the ADP listserv announcing that a male society member and house resident stood accused of raping a female member. In rather florid language, the email declared that the accused had "flagrantly violated his vows, disregarded his obligations as a Member, and…transgressed the rules of life," and that if he did not resign from ADP voluntarily the executive board would seek his immediate expulsion.

The next day, after Nungesser informed Leila that the university had assured him he could stay at the house while the case was pending, she sent a sheepish follow-up email noting that "all members deserve due process, as well as an opportunity to tell their side." Shortly after that, however,

Nungesser found himself facing another accusation—this time from an ADP resident, identified as "Josie" in several media reports, who claimed he had grabbed her and tried to kiss her at a party over a year earlier. As a result, he was ordered to move out of ADP.

According to both Nungesser and a student advocate who attended the hearing on Josie's complaint, Leila testified at that hearing and acknowledged that she encouraged Josie to come forward. The record in Adam's case provides additional confirmation that she was actively collecting allegations against Nungesser. Interestingly, while the investigators' report stated that Adam didn't have an apparent motive to falsely accuse Nungesser, it took note of the fact that "at the time of the Complainant's initial disclosure, at least several of his close friends and co-fraternity members were engaged in a process intended to evict the Respondent from the fraternity house." For a university document, this comes startlingly close to an admission that Nungesser may have been the target of a group vendetta.

Nungesser's <u>lawsuit</u>, which briefly mentions Adam as "a fourth accuser," alleges that he is a "close friend" of Sulkowicz's, that she instigated his complaint after Nungesser began to tell his side of the story to the media, and even that she mentioned this new accusation to reporters before Nungesser was officially notified of it. At present, these are unproven charges. Nonetheless, the circumstances under which Adam told his story to the media certainly support the claim of an agenda to discredit Nungesser after he made some headway in the court of public opinion.

After my *Daily Beast* article, a number of people said that while they found some of the evidence in Nungesser's favor persuasive, they found it hard to believe that three women would collude for no apparent reason to accuse an innocent man of rape. Feminist pundit Amanda Marcotte, in her <u>commentary</u> on Nungesser's lawsuit, sneered that my article painted him as "a hapless victim of a coven-like conspiracy of wicked women who make false accusations" for no apparent reason except "misogynist stereotypes about the inherent wickedness of women."

But the collusion scenario in this case requires no irrational and groundless malevolence. If Nungesser is innocent, it is entirely plausible that Sulkowicz and Natalie, who met at a party and discussed their history with him shortly before they filed charges, may have genuinely goaded each other into the conviction that he abused them (or, as Sulkowicz <u>put it</u> to *Jezebel*, "Together, we [came] to a better understanding of our shared trauma"). It is also entirely plausible that Josie and Adam either reinterpreted their past encounters with

him, or even fabricated stories in the sincere belief that they were helping eject a rapist from the house and supporting his victims. The problem is not female "wickedness"; it is a campus culture that fetishizes trauma and turns "survivorship" into a cult.

In time, Nungesser's lawsuit—assuming that he is in it for the long haul—will probably reveal more about the facts of this convoluted story. In the meantime, the new charge, originally hauled out as a counterattack to Nungesser's defense, seems instead to bolster his case.

Start your day with *Reason*. Get a daily brief of the most important stories and trends every weekday morning when you subscribe to *Reason Roundup*.

Submit

---

## *NEXT:*  9 Media Tropes About Free Speech

---

**CATHY YOUNG** is a contributing editor at *Reason*.

CULTURE   RAPE   CRIMINAL JUSTICE   CAMPUS FREE SPEECH

       MEDIA CONTACT & REPRINT REQUESTS


💬 Show Comments (459)

About   Browse Topics   Events   Staff   Jobs   Donate   Advertise   Subscribe   Contact   Media   Shop   Amazon

© 2024 Reason Foundation   Accessibility | Privacy Policy | Terms Of Use

This site is protected by reCAPTCHA and the Google **Privacy Policy** and **Terms of Service** apply.