# PLAINTIFF'S RESPONSE IN OPPOSITION
## TO THIRD-PARTY MOTION TO UNSEAL

Dear Judge Ho,

I write in strong opposition to Professor Eugene Volokh's motion to intervene and unseal the complaints in Doe v. Columbia, 1:23-cv-10393-DEH and Doe v. Kachalia, 1:23-cv-10395-DEH. While I respect Professor Volokh's academic interest in these cases, unsealing the complaints at this stage would severely prejudice my privacy rights and jeopardize my safety, with potentially catastrophic consequences. The Court should deny Professor Volokh's motion for several compelling reasons.

First and foremost, this Court has already carefully considered the privacy interests at stake and determined that pseudonymity is necessary to protect my identity as a sexual assault victim. See Columbia Dkt. 6 at 2; Kachalia Dkt. 6 at 2. The Court recognized the highly sensitive and personal nature of the allegations in the complaints and the risk of harm if my name were publicly disclosed. Id. Professor Volokh's motion disregards the Court's reasoned decision to grant pseudonymity and fails to establish any changed circumstances warranting reconsideration of that order.

Courts have long recognized the importance of protecting the identities of sexual assault victims, even when they proceed anonymously. See, e.g., Doe v. Colgate Univ., 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) (allegations that victim suffered sexual assault constitute highly sensitive and personal information justifying her proceeding under a pseudonym); Doe v. Townes, 2020 WL 2395159, at *6 (S.D.N.Y. May 12, 2020) (collecting cases). That is because sexual assault victims face a serious risk of retaliation, stigma, and mental health trauma if their identities are revealed. See Doe v. Skyline Autos. Inc., 375 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (noting sexual assault victims face the risk of stigmatization, retaliation, and further psychological trauma if their identities are disclosed). I have documented the severe mental health impacts I have suffered as a result of the assaults, including suicidal ideation requiring ongoing treatment. Unsealing the complaints detailing my abuse would likely trigger a relapse of these symptoms and retraumatize me all over again. See Doe v. Colgate Univ., 2016 WL 1448829, at *3 (allowing sexual assault victim to proceed anonymously based on allegations of mental health issues, including a suicide attempt). No academic interest can justify inflicting such serious harm.

Moreover, Professor Volokh's reliance on the presumption of public access to judicial records is misplaced here, where the Court has already found that my privacy interests outweigh that presumption. See Doe v. Townes, 2020 WL 2395159, at *5 (holding a plaintiff's privacy interest is a compelling reason to limit public access in sexual assault cases). Redacting my name would

be insufficient to protect my privacy, as "the public filing of a complaint containing detailed allegations of sexual assault, even with names redacted, can still lead to exposure of plaintiff's identity." Id. at *6. The complaints contain highly sensitive details about the assaults I suffered that could be used to identify me based on information already in the public domain. Professor Volokh fails to acknowledge the serious risk of retaliation and invasion of privacy I would face if the complaints were unsealed, even in redacted form.



That risk is especially acute here given the prior public exposure of my assailant ▇Assailant 1▇'s identity based on a *mere footnote* in an unrelated case. In 2015, the website ▇▇▇▇ was able to identify my assailant by name using only the details that he was a ▇▇▇▇ ▇▇▇▇; See also **Exhibit 1** ▇▇▇▇ (attached). The article included ▇Assailant 1▇'s name, photos, and personal information taken from his social media accounts. Id. Even more troublingly, the ▇▇▇▇ article was further publicized on ▇▇▇▇, a ▇▇▇▇, where users posted links to ▇Assailant 1▇'s social media accounts and labeled him a ▇▇▇▇; See **Exhibit 2** ▇▇▇▇ (attached). While this leaked information was helpful in corroborating the facts in my complaint[1], it also shows the devastating real-world consequences of having one's identity publicly revealed as either a perpetrator or victim of sexual assault. I should not have to risk subjecting myself to similar exposure, harassment and deleterious mental health effects by unsealing the sensitive details in my complaint.

As in ▇▇▇▇, the detailed nature of these allegations themselves could lead to the identification of the plaintiff, even if names are redacted. This is because the context and specifics of the allegations may be enough to identify the individuals involved and cause acute, irreparable and foreseeable harms including but not limited to harms intentionally or unintentionally caused by motivated internet bloggers; see United States v. Amodeo, 71 F.3d 1044, 1051 (2d Cir. 1995) ("As the Supreme Court noted in Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), courts have the power to insure that their records are not "used to gratify private spite or promote public scandal," and have "refused to permit their files to serve as reservoirs of libelous statements for press consumption." Id. at 598, 98 S.Ct. at 1312 (internal quotation marks and citation omitted) (collecting cases); see also Stevenson v. News Syndicate Co., 276 A.D. 614, 96 N.Y.S.2d 751, aff'd, 302 N.Y. 81, 96 N.E.2d 187 (2d Dep't 1950)").

---

[1] See ▇▇▇▇ (Plaintiff recounting Columbia's finding that "[▇Assailant 1▇'s] complaint *[against white male student]* was riddled with inconsistencies" [...] and alleging he was encouraged by [his female friend] to file the false complaint).

I bring to the court's attention that Professor Volokh's Dean at the UCLA Law School has issued a public apology to the law community for his derogatory use of the "n-word" both in class and outside of class, suggesting his First Amendment interpretations offline and online may cause harm.[2] Further, the United States Court of Appeals for the First Circuit recently issued a decision in Doe v. Town of Lisbon affirming the district court's exercise of discretion in denying Volokh's motion to unseal and oppose pseudonymity, stating "Professor Volokh's interest in learning the plaintiff's real name so he can, in his words, "effectively" research the plaintiff's "past cases or controversies" and gain "important context" about the case therefore does not outweigh the strong public interest in preserving at least temporary anonymity" see Doe v. Town of Lisbon, No. 1:21-CV-944-JL, 2022 WL 2274785, at *6 (D.N.H. June 23, 2022), aff'd, 78 F.4th 38 (1st Cir. 2023). I add that the very same website for which Volokh writes (███████) is *the very same website* that ran a story interviewing ██Assailant 1██ as "██████"[3] and publicly airing his false allegations against white male student ██████ where Columbia categorically found ██Assailant 1██ "giggling" and "not credible," which led to his being named in ██████'s amended complaint against Columbia as John Doe #2 with a link to the ██████ article in a footnote **(see Exhibit 3).**

Professor Volokh's status as an academic does not entitle him to access sealed judicial records that implicate such highly sensitive privacy interests. While courts have recognized a "qualified right of access" for the press and public to judicial documents, that right is not absolute and must yield to countervailing privacy concerns. See Newsday LLC v. County of Nassau, 730 F.3d 156, 163 (2d Cir. 2013). Professor Volokh's general interest in writing about Title IX cases does not overcome the acute privacy and safety risks presented here. See United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) ("[T]he privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation."); see also Doe v. Colgate Univ., No. 5:15-CV-1069 (LEK/DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) (holding that, at an early stage of litigation, Plaintiff's privacy interest outweighs the presumption of public access to judicial documents and sealing the complaint to preserve Plaintiff's anonymity and protect her from further psychological harm), see also Doe v. Townes, No. 19 Civ. 8034 (ALC), 2020 WL 2395159, at *6 (S.D.N.Y. May 12, 2020) (holding sealing of complaint necessary to protect

---

[2] https://reason.com/volokh/2020/04/14/ucla-law-dean-apologizes-for-my-having-accurately-quoted-the-word-nigger-in-discussing-a-case/

[3] ██Assailant 1██ has a demonstrated pattern of hiding behind other people, institutions and names to avoid accountability. As Plaintiff stated in his complaint, ██Assailant 1██ both employed his white roommate to launch false allegations against Plaintiff to cover up his conduct, and more recently changed his Twitter, Instagram and other social media accounts to *Plaintiff's name*, a fact his mother ██████ believed was a marijuana-induced "alter-ego" that ██Assailant 1██ reverted to before "assaulting," "strangling," "dragging" her throughout her apartment and beating her to a "bloody" pulp, as noted in her letter to a Los Angeles Superior Court Judge requesting an eviction and order of protection from him.

Plaintiff's identity and confidential personal information, and finding that these privacy interests are sufficient to overcome the presumption of public access to the complaint.); see also Doe v. Smith, 105 F. Supp. 2d 40, 44 (E.D.N.Y. 1999) (noting a strong public interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes). These four cases recognize that where a plaintiff is proceeding anonymously, especially in sensitive matters like drug-facilitated sexual assault, courts should restrict access to sealed filings to protect the plaintiff's anonymity and prevent further trauma. In light of ongoing psychiatric treatment, unsealing would cause severe emotional distress to a point at which I could not pursue the current legal process and would suffer severe risk to my safety and survival. The privacy interests in these circumstances outweigh the presumption of public access. In this matter involving this university and these specific and flagrant abuses, and with this notorious assailant under such extraordinary circumstances, there is not available a more narrowly tailored method of protecting Plaintiff's overriding privacy and mental health interests.

Finally, Professor Volokh's motion is premature, as this litigation is still in its early stages. If the complaints are unsealed now, the damage to my privacy will be done even if I ultimately prevail on the merits. See Mirlis v. Greer, 952 F.3d 36, 42 (2d Cir. 2020) (holding that a district court can reasonably determine that the privacy interests at stake in a sexual abuse case support sealing during the pretrial stages of litigation). The Court should maintain the status quo of pseudonymity until the parties have had an opportunity to fully litigate the merits of my claims.

In conclusion, Professor Volokh's motion to unseal the complaints should be denied to protect my compelling privacy and safety interests as a victim of sexual assault. The limited value of public access at this early stage of the litigation is far outweighed by the severe harm and trauma that unsealing would cause. I respectfully ask the Court to maintain the confidentiality of these highly sensitive proceedings.

I thank the court for its attention to this matter.

Sincerely,

/s/ John Doe

# EXHIBIT 1







# EXHIBIT 2

# EXHIBIT 3



5/25/24, 11:11 PM

