**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------------------X
JOHN DOE,                                      :
                                               :
                    Plaintiff,                 :              COMPLAINT
                                               :
                                               :
        -against-                              :
                                               :              JURY TRIAL
COLUMBIA UNIVERSITY, and                       :              DEMANDED
TRUSTEES OF COLUMBIA UNIVERSITY,               :
                                               :
                    Defendants.                :
-----------------------------------------------------------------------------X
```

Plaintiff John Doe (hereinafter referred to as "Plaintiff" or "John"), representing himself *pro se*, as and for his Complaint, respectfully alleges as follows.

Plaintiff previously sued Columbia University in this action and seeks to revive these claims under the Adult Survivors Act. Plaintiff also submits this action in contention of the settlement agreement that followed the first initiation of this action against Columbia University on the grounds that it was and is unconscionable. Plaintiff asks permission of the court to submit a motion regarding the unconscionability of that settlement agreement, and to stay a premature dismissal of this action pending judicial review of that motion.

**THE NATURE OF THIS ACTION**

1.  From the first semester of his freshman year, John, who identifies as African-American and is a gay male, went from being a star academic high school student who thrived in his first two years at Columbia, to attempting suicide after Defendant Columbia University weaponized its Title IX office to bring two Title IX actions against John as a direct result of Columbia's pattern or practice and continuing violations of sexual orientation and racial discrimination, and hostile educational environment in violation of the requirements of 42 USCS § 1981, Title VI and IX of the Education

Amendments of 1972 and applicable State law, as well as breach of Columbia's own codes and policies.

2. Prior to matriculating at Columbia, John was awarded multiple local, city and state academic awards and graduated on full private high school scholarship, also receiving awards for his good character and achievements. Throughout his high school experience, John received accolades from students, parents, faculty, as well as his school's headmaster, humanitarian organizations and county legislators for his character and achievements.

3. Plaintiff seeks redress against Defendant Columbia University and the Trustees of Columbia University (collectively, "Defendant Columbia" or "Columbia University") due to the actions, omissions, errors, and the flawed procedures, and/or gross negligence and overall failure to provide Plaintiff with an expected standard of due process, concerning the false allegations of sexual assault made against John, a gay male, who was a then-junior student at Defendant Columbia in good standing, ███████████████████████ and a community leader with an otherwise unblemished record. These unfounded allegations were made by Columbia administrators who filed an unfounded and retaliatory third-party Title IX complaint against Plaintiff John Doe on behalf of a Jack Doe, a heterosexual male, which caused sustained academic and psychological injury to Plaintiff. Plaintiff brings this Complaint in part due to Columbia's abuse of power, and in protection of his rights as a gay student.

4. Plaintiff brings this complaint to the court upon seeking professional counsel in November 2019 and promptly becoming aware and having had reason to know that Plaintiff received a deliberately indifferent response from Defendant Columbia to his two (2) reports of sexual assault and physical assault while he was a student, and a deliberately indifferent response from Defendant Columbia in failing to provide, in fact, actively witholding from Plaintiff-respondent, allegations and pertinent details germane to a Title IX investigation.

5. While he was a student at Columbia University, John was sexually assaulted by student ███████ ████████ ("Assailant 1") and physically assaulted by another ("███████████████" or "Assailant 2"), but when he sought assistance and protection from Columbia, the school did nothing in response to his reports. Plaintiff alleges that Columbia's clearly unreasonable failure to

promptly and appropriately investigate and respond to student sexual and physical assaults of which it had actual knowledge substantially increased the risk of sexual and physical assault for Plaintiff individually and for all gay students at Columbia. Plaintiff further alleges that Columbia's own policies and selective conduct code enforcement created a discriminiatory environment for gay students that fostered sexual harrassment, sexual assault, physical assault and denied educational opportunities to Plaintiff and other gay students. Plaintiff seeks to hold Columbia liable under Title IX of the Education Amendments of 1972 ("Title IX"). Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The statute applies to a school's disparate provision of programs, aid, benefits or services, or the inequitable application of rules or sanctions on the basis of sex (based on sexual orientation[1]).

6. Plaintiff alleges that Columbia discouraged him from reporting his assaults, failed to adequately investigate each of the assaults, and misled and lied to Plaintiff about his options for reporting and accomodations, all while setting him up in retaliation, to be found responsible for a wholly fabricated allegation of "grabbing the arm" of Jack Doe. Plaintiff also alleges that these practices chilled other students from reporting sexual and physical assaults. Plaintiff asserts that Columbia's practices in handling their reports reflect the school's widespread practice of mishandling reports of peer sexual assault. Doe also alleges that Columbia and its highest-ranking, policy-setting officers permitted the creation of a campus environment unsafe and hostile to Plaintiff as a member of a protected class of person (a black gay male) and an environment rife with sexual assault (one needs to simply google Columbia to see varied news reports of assaults on its campus) that substantially increased Plaintiff's chances of being sexually and physically assaulted.

---

[1] The U.S. Court of Appeals for the Seventh Circuit was the first to find that sexual orientation should be considered a form of sex discrimination prohibited by Title VII. The Second Circuit, with the *Zarda* case, followed. Title VII case law often is cited as precedent in other civil rights contexts, such as Title IX rules prohibiting sex-based discrimination in K–12 schools and universities. Citation: *Supreme Court to Consider Whether LGBT Bias Is 'Sex' Bias (2)* https://news.bloomberglaw.com/daily-labor-report/do-not-publish-supreme-court-to-consider-whether-lgbt-bias-is-sex-biassupreme-court-wont-consider-whether-lgbt-bias-is-sex-bias

7. Plaintiff also alleges that administrators in the Office of Multicultural Affairs ordained an anti-gay educational environment and denied Plaintiff, in exclusion, from participation in an educational program while subjecting him to discminination on the basis of sexual orientation, ultimately creating a hostile educational environment that deprived Plaintiff of a normal college education, educational opportunities, and future earning capacity. In addition, Columbia exhibited a clear pattern of discriminatory enforcement of school rules with regard to Plaintiff's Fall 2012 "Title IX 1" and Summer 2015 "Title IX 2" Title IX proceedings and complaints.

8. For two (2) months leading up to the third-party Title IX 1 complaint, Plaintiff was engaging IRC director Marta Esquilin's direct superior, Dean Melinda Aquino, with serious concerns about Ms. Esquilin's management of the IRC; Ms. Esquilin, as director of the IRC, and Defendant Columbia had upheld a discriminatory outcome whereby Plaintiff was disallowed by a group of students from joining a university-sponsored rap-music club solely based on his sexual orientation. Plaintiff unsuccessfully sought relief from this discriminatory decision through Ms. Esquilin and then through one of Ms. Esquilin's administrative superiors in Columbia's Office of Multicultural Affairs, dean Melinda Aquino.

Nature of First Title IX Action

9. John Doe and Jack Doe were acquaintances residing in the same special interest community known as the Intercultural Resource Center/House (IRC) at Columbia. It was at Jack Doe's suggestion that they engage in a consensual kiss. On the evening of September 7, 2012 ("Evening of September 7"), Jack Doe approached Plaintiff John Doe at a university-sponsored function for LGBTQ students and their allies, hosted by the Columbia Queer Alliance. Jack Doe informed Plaintiff that he had "just kissed a guy for the first time" and that he "wanted to try it again" then sat on a chair beside Plaintiff and proceeded to tell him about that experience. After a period of flirtatious exchange, Plaintiff asked Jack Doe's consent for a kiss. The two proceed to kiss for approximately ten minutes, throughout which Jack Doe pulled Plaintiff towards him and smiled. During the kiss, ███████████████████ ("Assailant 1") and friend Student 1

███ entered the function to meet their other friends who were already at the function. That very same evening, Plaintiff was sexually assaulted at the function by Assailant 1 in the lower-level men's bathroom.

10. Throughout the two months between the evening of September 7 and the third-party complaint, Plaintiff was involved in the aforementioned tension with Ms. Esquilin regarding the prejudicial contact he experienced at the hands of other students while living in the residence hall for which she served as director.

11. Several weeks into the Fall 2013 semester and nearly two (2) months after the kiss, a third-party decided to report the Evening of September 7's kiss as "non-consensual" sexual activity. No contemporaneous report was ever made nor was any police report ever filed by Jack Doe in connection with his kiss with Plaintiff John; and indeed, no allegation of improper behavior was made by Jack Doe until a third-party filed a complaint probably based on information gathered from the Plaintiff himself against university policy (see paragraph 59). Notwithstanding the foregoing, Defendant Columbia found John Doe guilty of sexual assault by "grabbing the arm" of complainant Jack Doe and issued Plaintiff John Doe an order of disciplinary probation until his graduation.

12. In Defendant Columbia's finding that Plaintiff was guilty of sexual assault in kissing Jack Doe the evening of September 7; Plaintiff John Doe was deprived of the most basic due process and equal protection rights and was discriminated against on the basis of his sexual orientation. In essence, there was a rush to prejudgment with little thought, if any, given to the actual specifics of Plaintiff John Doe and Jack Doe's actual situation. John Doe was denied the right to receive proper notice of allegations; John Doe was denied the confidentiality and protection to ensure preservation of privacy; he was denied the right to be informed of the university's gender-based misconduct policies and the right to have those policies followed and observed by Columbia administrators; he was denied the right to review all applicable documents prior to the hearing in the Gender-Based Misconduct Office, merely subjected to peruse a very heavily redacted complaint with sparse information about the actual allegations at hand; John Doe was met with overall dismissal as to their importance; he was denied the right to not make self-incriminating

statements, and plaintiff was denied the right to appeal the hearing panel's decision, intimidated by Columbia administrators with threats of "worse outcomes" if he appealed and that he "was lucky" to not have received an order of suspension or expulsion from the university tribunal.

13. When Plaintiff received a heavily redacted third-party complaint of allegations against him in October 2012, he was not made aware of many pertinent facts germane to the Title IX proceeding. Even after multiple requests for unredacted information in 2012, 2013 and 2014, Ms. Rooker and Ms. Siler in concert with their replacements and other high-ranking officials falsely represented, continually concealed, and refused to provide even the most basic of information regarding information contained in the complaint, including the identity third-party complainant (who was accusing Plaintiff of misconduct -- was it Ms. Esquilin with whom Plaintiff had a strained, tense relationship or assailant Assailant 1 ), the nature of the allegation (what exactly was Plaintiff being accusd of, and does the redacted information include Plaintiff's report of sex assault by Assailant 1 ?), what time and date did the alleged behavior take place, what specifically constituted the alleged behavior, and other important facts. To this day, these details remain redacted and Plaintiff was at no point in receipt of an unredacted version of the Title IX complaint against himself. Because of this, Plaintiff pleads to invoke the equitable tolling doctrine of fraudulent concealment, because, again, Plaintiff alleges facts from which the Court can reasonably infer that Plaintiff could not have discovered his post-reporting causes of action in the exercise of due diligence. In asserting fraudulent concealment as an affirmative defense to the statute of limitations Plaintiff establishes that Defendant Columbia (1) was in two separate acts made aware that a wrong occurred, one in Sep 2012 and the other in July 2015; (2) had a purpose to conceal the wrong (in protecting student-rapist Assailant 1 and/or the scorned and biased Columbia administrator Marta Esquilin); and (3) did withhold and conceal the wrong by heavily redacting large portions of an official Title IX complaint against Plaintiff, with those redactions remaining after repeated attempts to exercise Plaintiff's respondent rights to view the entire complaint of allegations against himself, and by making multiple misrepresentations to maliciously cover up and prejudically change the Plaintiff's position with the scheme (first in Fall 2012 of accusing Plaintiff of non-consensual contact [kissing] then one year later during Plaintiff's

psychological medical leave accusing Plaintiff of sexual assault [arm grabbing] under proceedings launched with the same initial redacted notice of allegations; (4) and where Plaintiff relied upon the conduct of Defendant Columbia in providing information and procedures (per university Title IX Policy) to know, respond to, and to defend himself against serious charges of sexual assault in a fradulent university Title IX proceeding for which he was wrongly found responsible; "Where a defendant has a duty to disclose the existence of a cause of action, but fraudulently conceals the action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party either learns of its right of action or should have learned through the exercise of due diligence." (*Kerlin*, 263 S.W.3d at 925; *see also Shah*, 67 S.W.3d at 841 ("Fraudulent concealment tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence."). Therefore the fraudulent concealment doctrine should toll the statute of limitations until such time as Plaintiff, with the exercise of the diligence of professional counsel, could be made promptly aware of Defendant Columbia's breach of contract (and deliberately indifferent response to Plaintiff's reports of sexual assault) and discover the wrongful conduct.

14. Defendant Columbia failed to adhere to its own guidelines and regulations, and the guidelines and regulations themselves are insufficient to enable a student to have a fair hearing. The decision reached was discriminatory and/or arbitrary and capricious, given the evidence, a discriminatory bias against gay black men was required for a conclusion of sexual misconduct to be reached and probation ordered until John's graduation.

15. In fact, it is incredulous for a college to entertain allegations of sexual assault of a white man by a black man while trampling on the respondent's basic rights, all the while making up even more false allegations as the process goes along (the allegation of misconduct magically changed in Fall 2012 from kissing to arm-grabbing in Fall 2013); altering key events, and in not one but two separate Title IX actions in 2012/2013 and 2015 completely disregarding the contractual and civil rights of a gay black male student of higher education in a protected class. While Columbia ignored John's assaults, it brought two rounds of investigations in connection with white male students against John, and African-American male.

16. In TItle IX 1, Columbia prosecuted the white student's claim against John, but Columbia did not prosecute ▮▮▮▮▮▮ ("Assailant 1") for the injuries he caused John. In Title IX 2, Columbia pursued an investigation against John on behalf of a white student even though it was that student who assaulted John. With regard to John's claims against his Assailants 1 and 2, Columbia neither pursued a claim on his behalf as it did for Jack Doe and ▮▮▮▮▮▮ (Assailant 2), nor offered accommodations in response to John's assaults.

17. John twice faced the stress of being sanctioned and the distress and trauma of being sexually abused by Assailant 1, and physically abused by Assailant 2, all while being exposed to a pattern or practice of sex-based ("based on sexual orientation") discrimination and racism that allowed John to be sexually and physically abused, but denied him the ability to exercise his rights pursuant to Columbia's codes and policies to the same extent it allowed its white male students who falsely claimed to have suffered sexual abuse to do so. The toll these experiences had on John's academic performance and mental health were severe.

18. Particularly of note in Title IX 1 is the fact that John Doe was intimidated by a Columbia administrator (who previously violated his privacy rights under Columbia's policy) from filing a sanctions appeal with his dean, telling him "you got lucky, and you'll get suspended or worse on appeal to your dean."

19. Invoking the continuing violation doctrine, John Doe has been greatly damaged by Defendant Columbia's continuing violations and breaches of contract: from his first assault in Sep 2012 and the breaches of contract therewithin, to the conclusion of the Title IX 1 investigation by Defendant Columbia against Plaintiff in December 2013 and the Title IX 2 August 2015, Defendant Columbia breached its contractual obligations with, gross mishandling and negligent action and inaction with regard to its gender-based misconduct policy and employee harassment policies. These facts demonstrate that Defendant Columbia engaged in subsequent acts of breach of contract throughout the period September 2012 to August 2015 and the fraudulent concealment that is still sustained, all of which may extend the limitations period. See, e.g., Messer v. Meno, 130 F.3d 130, 134–35 (5th. Cir. 1997) ("The continuing violation theory relieves a plaintiff of establishing

that all of the complained-of conduct occurred within the actionable period if the plaintiff can show

a series of related acts, one or more of which falls within the limitations period.")

20. Due to the foregoing, Plaintiff's educational career was put on hold; his academic future was

severely damaged; the monies spent on obtaining a college education at Defendant Columbia at

risk of being squandered; and his psychological and emotional health has been, to this day,

greatly compromised by the entire ordeal. Thus, John Doe brings this action to obtain relief based

on causes of action for, among other things, breach of contract and violations of federal and state

law as it pertains to Defendant Columbia's wild actions against a protected class of person.


## THE PARTIES


21. Plaintiff John Doe ("Plaintiff"), is a natural person residing in the State of New York. During the

events described herein, John Doe was a student at Columbia University and resided on the

Columbia University campus in New York, New York.

22. Upon information and belief, Defendant Columbia University ("Defendant Columbia" or "Columbia

University" or "Columbia") is a private Ivy League University in the Upper Manhattan area of New

York City. Upon information and belief, Columbia University operates under a 1787 charter that

places the institution under a Board of Trustees, namely, the Trustees of Columbia University in

the City of New York.

23. John Doe and Defendant Columbia are sometimes hereinafter collectively referred to as the

"Parties".


## JURISDICTION AND VENUE


24. This Court has diversity, federal question and supplemental jurisdiction pursuant to 28 U.S.C. §

1331 and under 28 U.S.C. § 1332 and 28 U.S.C. § 1367 because: (i) John Doe and Defendant

Columbia the amount in controversy exceeds $75,000.00, exclusive of costs and interest; and (ii)

the claims herein arise under federal law; and (iii) the state law claims are so closely related to

the federal law claims as to form the same case or controversy under Article III of the U.S. Constitution.

25. This Court has personal jurisdiction over Defendant Columbia on the grounds that Defendant Columbia is conducting business within the State of New York.

26. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

I.  **Agreements, Representations, Covenants & Warranties Between John Doe and Defendant Columbia**

27. John Doe is a ████████████ and the son of a ████ . He is a gay black man. He is the first in his family to attend a four-year university; John Doe comes from a household where education is held in high esteem. John Doe worked diligently in high school, succeeded in eleven (11) advanced placement courses, earned AP Scholar with Distinction, National Cum Laude Society, published author in two (2) peer-reviewed medical journals, multiple local, city and state academic awards and graduated on full private school scholarship near the top of his class. John Doe scored in the 97% percentile in the PSAT standardized college entrance examination.

28. Setting his sights on an Ivy League education, John Doe applied early decision to Columbia University and was accepted. He graduated in ████ .

29. Upon his acceptance, Defendant Columbia provided John Doe with copies of its school policies, including the Gender-Based Misconduct Policies for Students and Columbia's Employee Policies and Procedures on Discrimination, Harassment, Sexual Assault, Domestic Violence, Dating Violence, and Stalking.

II.  **John Doe's Time at Columbia University, His Relationship to Jack Doe & The Evening of September 7, 2012 that led to First Title IX Action**

[10]

30. Shortly after his freshman year at Columbia University, John Doe became a member of Columbia's Intercultural Resource House ("IRC"), a special-interest living community for students passionate about multicultural and diversity initiatives on campus.

31. John and Jack Doe met at the beginning of John's second year living in the IRC at Columbia University in August 2012. Jack Doe was a then-sophomore and John Doe was beginning his junior year. They both lived in the same residence hall (IRC) with other student residents.

32. John Doe was fairly close to all the student residents. John and Jack often spent time together in the same circle of friends. John and Jack interacted on a weekly basis in social and community events together before and during the semester. Jack Doe's most obvious acquaintance, though, was ███Assailant 1█████████████████████ who was also a then-sophomore.

33. On the evening of September 7, 2012, John, Jack Doe, ███Assailant 1███ , ███Student 2███ , ███Student 1███ ███ and ███Student 3██████████ , among others residents, spent time in ███Student 2's███ room in the IRC hanging out before planning to attend the Columbia Queer Alliance's First Friday Dance ("the function"). This was a university-sponsored social function for LGBT students and their allies held in Columbia's Lerner Hall's Party Space on the first friday of every month.

34. There are two levels that comprise Columbia's Lerner Hall Party Space: an open lower-level space with bathrooms and a bar area, and an upper-level lounge area with plush seating.

35. At 10:05pm, John Doe was accompanied to the function by ███Student 2███ and ███Student 3███ ███████ . After a few moments of dancing in the lower-level party space, Plaintiff returned to the upper-level lounge area, where he relaxed for approximately 20 minutes.

36. At approximately 10:45pm on September 7, 2012, Jack Doe entered the upper-level of the party space unaccompanied. He proceeded to place himself beside Plaintiff inside the lounge area and talked to Plaintiff for a while. Jack Doe chatted extensively about his night and with no discernible incapacitation informed John Doe that he had "just kissed another guy" and he "wanted to try it again."

37. Somewhere between 5 and 10 minutes later, Plaintiff asked Jack Doe's consent for a kiss asking "Can I kiss you?" Jack Doe replied "Yes" and the two kissed for approximately 10 minutes, first while seated and then while standing and leaning against lounge furniture. Throughout the kiss,

Jack Doe pulled Plaintiff toward himself and smiled as he continued to kiss Plaintiff. The next day, Jack Doe would tell Plaintiff that he "had fun" and "liked it," referring to the kiss, but expressed doubt about how his friends would react stating he "doesn't want [his] friends" to learn about their interaction.

38. At a point during the kiss, ▮▮▮▮▮▮ entered the upper-level lounge with ▮▮▮▮▮▮ , also an IRC resident. They stopped to observe the consensual kiss and ▮▮▮▮▮▮ , interrupted the kiss and tried to convince Jack Doe against continuing to kiss Plaintiff. Jack Doe lingered in the upper-level lounge area before joining ▮▮▮▮▮▮ and ▮▮▮▮▮ in the lower-level party space.

39. As midnight approached and the crowds at the function dwindled, ▮▮▮▮▮▮ ("Assailant 1") forcibly led Plaintiff into the lower-level men's bathroom where ▮▮▮▮▮▮ proceeded to unzip his pants and reveal his genitals. He then removed his cell phone from his pocket and recorded a video of Plaintiff on the floor in the corner of the bathroom with his penis on Plaintiff's face and in the frame of the recording, coercing Plaintiff to perform fellatio. Plaintiff became inebriated as the night progressed, due to the alcohol John, Jack Doe and the other IRC student-residents consumed before the function, and was distinctly unaware of what precisely ▮▮▮▮▮▮ was doing.

40. The very next morning, Plaintiff approached ▮▮▮▮▮▮ and asked him what he did to him the night before. In refusing to acknowledge his actions from the night before ▮▮▮▮▮▮ replied "I saw you sitting on a bench." Plaintiff then approached ▮▮▮▮▮▮ , who accompanied ▮▮▮▮▮▮ to the previous evening's function, to ask her recollection of ▮▮▮▮▮▮ actions; she replied "I don't know, but I had a threesome." Upon information and belief, the video ▮▮▮▮▮▮ recorded was later circulated throughout the student body. This horrific incident has had tremendous psychological impact on Plaintiff to this day. Plaintiff is currently under the care of a psychiatrist and a psychiatric counselor and they routinely discuss the actions of ▮▮▮▮▮▮ and the non-consensual assault and recording. Plaintiff, to this day, experiences heavy anxiety, panic attacks and depression that interferes with his daily routine, related to this event and the actions or lack thereof of Defendant Columbia.

41. During the Fall 2012 semester John was sexually assaulted by another student -- Assailant 1
    -- who initiated a sexual act in the men's bathroom. But it was Jack Doe who
    would bring a false Title IX action against John. Regardless, Columbia did not bring an action
    against the student-rapist Assailant 1 , even after Plaintiff notified Ms. Rosalie Siler of the
    sexual assault.

42. Defendant Columbia took no action against _____ ("Assailant 1") for recording a lewd
    and non-consensual encounter in the men's bathroom with Plaintiff, even after it was reported to
    Ms. Rosalie Siler, Title IX investigator, during the first Title IX proceedings. Plaintiff strongly
    maintains the first Title IX proceeding was entirely based on a sham accusation from Columbia
    administrators' malicious intent to protect John's assailant and remove Plaintiff from his
    residence.

43. It should be known that Plaintiff's assailant, Assailant 1 , has a history of falsely accusing
    Columbia students of sexual assault[2]. If he is he third-party complainant, these facts should shed
    light on the veracity of his claims, notwithstanding his vulgar sexual conduct against Plaintiff the
    evening of September 7. In fact, it was reported in the media that _____ ("Assailant 1"
    aka "Adam") falsey accused Columbia scholarship student Paul Nungesser of sexual assault, as
    Paul's lawsuit against Columbia briefly mentions Assailant 1 by pseudonym (*Nungesser v.
    Columbia University* (1:15-cv-03216) District Court, S.D. New York). Columbia's investigators
    properly found contradictions, inconsistencies and drastic discrepancies in Assailant 1's account of
    Paul's alleged assault as "hyperbolic and illogical" in the words of the report. This false allegation
    was reportedly "witnessed" by an individual pseudonymized as Leila in Assailant 1's fraternity who
    sent out an email to the fraternity of which Nungesser was also a member, calling for his
    expulsion and that she wanted him out of the fraternity dormitory. Shortly after that call to action,
    Assailant 1 filed his false complaint against Nungesser. From the source in footnote one (1): "The
    record in Adam's ("Assailant 1's ") case provides additional confirmation that [Leila] was

---

[2] S*ee http://jezebel.com/how-to-make-an-accused-rapist-look-good-1682583526* (Jezebel, Feb. 6, 2015). Where
Emma Sulkowicz presented a fourth accuser, a close friend of hers and a fellow visual arts student at
Columbia, known as "Adam," whose real name is Assailant 1 and who made up a false allegation
against Paul. Paul was informed about this complaint first by reporters to whom Emma presented this false
complaint.

actively collecting allegations against Nungesser. Interestingly, while the investigators' report stated that Adam didn't have an apparent motive to falsely accuse Nungesser, it took note of the fact that 'at the time of the Complainant's initial disclosure, at least several of his close friends and co-fraternity members were engaged in a process intended to evict the Respondent from the fraternity house.' For a university document, this comes startlingly close to an admission that Nungesser may have been the target of a group vendetta." This anedote is a clear demonstration of how Assailant 1 used Columbia sexual violence resources to attack his foes and participate in schemes to evict them from their residences, as he may have also done in John's case as the likely third-party complainant.

III. **Columbia IRC's Hostile Anti-LGBT Academic and Living Environment Beginning Fall 2012 Semester**

44. At the opening of the Fall 2012, Plaintiff began his second year in the Intercultural Resource Center/House ("IRC"), a special-interest house owned and operated as a residence hall and student activist center at Columbia University.

45. During the first week of September, student-residents of the IRC would freely choose which open-enrollment university-sponsored clubs or activities they would pursue as part of Columbia's Office of Multicultural Affairs extracurricular programming.

46. One of these student groups, the Columbia University Society for Hip Hop ("CUSH"), a student-run rap music group, would not allow Plaintiff and a female student-resident to join the university-sponsored extracurricular student group.

47. Internal emails circulated on CUSH's email listserv later referred to the aforementioned female student-resident as a "b*tch". The group met on Thursdays in the IRC, where they would engage with young visitors from outside Columbia within the New York area in what are known as rap battles or ciphers. Anti-gay epithets and harassing slurs such as "no-homo," "fag," and "pause" were used unsparingly during and throughout these rap battles, all while the ciphers were being held inside the IRC residence dormitory on Columbia's campus. Furthermore, members of the

CUSH student group would remove a rainbow gay pride flag and a gay rights memorial collage from the main lounge area in the IRC every Thursday during their weekly meetings, and replace it thereafter. Plaintiff first reported this pattern of discrimination and discriminiatory activity to Dean Melinda Aquino in September 2012.

48. Plaintiff's meeting with and petition to Dean Aquino resulted in no changes or amendments to that student groups' discriminatory behavior. The club members of CUSH would yet still disallow Plaintiff from inclusion into this university-supported student group. When Marta Esquilin, the IRC's director, gained knowledge of this meeting with her superior, her relationship with Plaintiff became severely strained.

49. Following the meeting with Dean Aquino, on October 3, 2012 Plaintiff published an open letter to the IRC and its student-residents, wherein he shined a light on the discrimination he was facing as a gay male in light of recent events at Columbia and the administration's deliberate indifference to his discrimination; he wrote "[a]t the beginning of the [semester], four house members--two female and two queer-identifying residents--attempted to join Columbia University Society of Hip-Hop (CUSH). [...] [CUSH's] violation of the house's policies and expectations did not rest there. The opresive rhetoric that is exchanged within CUSH's ciphers continually denigrate queer people and women in outstanding homophobic and misogynic fashions."

50. In retaliation to this letter, the very next day on October 4, 2012, Marta Esquilin, director of the IRC set up an interrogation with herself, Plaintiff and Columbia's Title IX investigator Ms. Rosalie Siler  inattendance at Plaintiff's residence hall, regarding the evening of September 7, 2012. During this interrogation, Ms. Esquilin in concert with Ms. Siler asked Plaintiff numerous questions about the evening of September 7, 2012 but would not tell Plaintiff what specific interaction or misconduct they were referring to, or even whom this alleged misconduct involved. This was a fishing expedition in search of a crime.

51. On October 19, Plaintiff was formally notified of allegations of non-consensual sexual contact: kissing. Not to be taken lightly, this rogue Title IX administrator, Rosalie Siler, has been involved in no less than four (4) other student lawsuits due to her negligence in faithfully and properly reporting and investigating Title IX complaints.

IV.    **Defendant Columbia's Mishandling of Third-Party Complaint About The Evening of**
       **September 7**

### PROCEDURAL CONCERNS REGARDING THE FIRST TITLE IX ACTION
### ("TITLE IX 1", or "OCTOBER 2012 ACCUSATION")

52. Plaintiff alleges that he had a valid enforceable contract with Columbia as an academic enrollee
    and also a resident living in on-campus housing. This enforceable contract is Columbia's August
    2012 Gender Based Misconduct policy and procedures. Specifically, a section entitled
    "Respondent Rights" on page 19 of the policy are listed as rights afforded respondents under
    university Title IX proceedings as enumerated in the policy.

53. As a matriculated student at Columbia and member in good standing of the Columbia community
    John relied on Columbia's policies in particular, Columbia Gender-Based Misconduct policy and
    procedures.

54. Before responding to the accusation or non-consensual sexual contact: kissing, Plaintiff sought to
    bring attention to procedural concerns and breaches of contract impacting his due process rights
    under the university's Title IX proceeding; a circumstance he believed impacted the ability of the
    office to provide him with the level of neutrality required under Columbia's August 2012 Gender
    Based Misconduct policy and procedures.

55. At the onset of Plaintiff's initial Friday October 19, 2012 3:00PM correspondence with Ms. Melissa
    Rooker, Columbia's Title IX officer, wherein Plaintiff was first informed of an allegation and
    simultaneously displaced from his place of residence ("Notice of Allegations"), she writes: "As we
    just discussed, our office received a report alleging you engaged in behavior that violated the
    Columbia University Gender-Based Misconduct Policies for Students." There was, in fact, never a
    direct conversation pertaining to this accusation. Instead, on Friday October 19, 2012, Plaintiff
    received the following email from Ms. Rooker at 2:46PM:

**From:** Melissa Rooker <mor2102@Columbia.edu>
**Subject: Student Concern**
**Date:** October 19, 2012 2:46:20 PM EDT
**To:** "███ @columbia.edu" <███ @columbia.edu>

Dear John,

I am sending this email as a follow-up to a voicemail I left you. I have a serious student concern to discuss with you and I am requesting that you contact me before 3pm today, October 19, 2012, to schedule a meeting with me today.

You may reach me at 212-854-5918.

Regards,

*Melissa*

Melissa Rooker, JD
Deputy Title IX Coordinator
Columbia University
103 Low Memorial Library, MC 4333
535 West 116th Street, New York, NY 10027
212-854-5918 (T) 212-854-1368 (F)
Email: mrooker@columbia.edu

56. Approximately fifteen (15) minutes after sending this email, Ms. Rooker sent the Notice of Allegations and summarily evicted John from his dorm. On October 19, 2012, Plaintiff worked a full day and so was not able to access Ms. Rooker's October 19, 2012 email communication until after the work day. Nevertheless he was effectively given a mere 15 minutes to respond to Ms. Rooker's "serious student concern." Upon arriving to his dorm on the evening of October 19, 2012, Plaintiff was shocked and surprised to discover that the locks had been changed to his dorm room. At that time, he was informed by the Graduate Hall Director ("Scott") that he had been moved to another dorm room and was prohibited from entering the IRC. Plaintiff was abruptly escorted out of the IRC by five (5) campus police. It was not until later that night that he read Ms. Rooker's October 19, 2012 correspondence.

**LACK OF PROPER NOTICE UPON WHICH TO VACATE THE PREMISES**

57. Plaintiff did not receive proper notice regarding the Interim Measure that the Title IX officer, Ms. Rooker, initiated under the University policy to remove him from his dorm room and to relocate him to another dorm. It was not possible to move his belongings out of the door room within the time frame described in the Notice of Allegations since Plaintiff was unaware of the notice to

[17]

move with was rendered on the same day. He had every intention of removing his belongings from the dorm room and complying the request. However, due to the untimely notice, it was humanly impossible for him to accomplish this on October 19, 2012.

## CONCERN REGARDING NEUTRALITY OF THE ADMINISTRATOR IN THE DISCIPLINARY PROCESS

58. In Ms. Rookers's October 19, 2012, correspondence, she stated, "As indicated in the policy and procedure, both the Title IX Investigator and I are impartial parties in the process. The Gender-Based Misconduct Policies for Students states on page 8, '*The Senior Manager is a neutral administrator in the disciplinary process. This person is responsible for coordinating the disciplinary process and for working with all involved parties. **The Senior Manager does not determine whether a policy violation occurred.** This individual also serves as the Deputy Title IX Coordinator focusing on reports of gender-based misconduct involving situations in which a student is the respondent.'* " The policy manual states on page 19 under Respondent Rights that respondents are afforded the right from making self-incriminating statements.

59. Plaintiff raised this concern in writing with Ms. Rooker on October 23, 2012, notifying her that her October 19, 2012 correspondence was not the first contact that Plaintiff received from her office regarding this matter. Instead, on October 5, 2012, Plaintiff attended a meeting in his dorm which was arranged by Marta Elena Esquilin, Senior Associate Director of Multicultural Affairs and Rosalie Siler of the Title IX office. It was indicated to Plaintiff that the nature of the meeting was not disciplinary, but rather a check-in about an incident involving another student. **Neither Ms. Esquilin or Ms. Siler informed Plaintiff that a report had been received alleging that Plaintiff had engaged in behavior that violated the Columbia University Gender-Based Misconduct Policies for Students.** Plaintiff has a record of the email correspondence setting up the meeting.:

60. The October 5, 2012, meeting which is more properly characterized as an interrogation was attended by both Marta Esquilin and Rosalie Siler. They did not inform Plaintiff that he was under

investigation, nor did they tell him that a complaint and/or accusation had been lodged against

him. Instead, they coerced Plaintiff into providing them with information which violated Plaintiff's

right against self incrimination and the Gender-Based Misconduct University policies and

procedures which protect against self incrimination. Moreover, according to the University

policies, the role of Title IX Coordinator is that of a neutral arbitrator. The interrogation Plaintiff

underwent which was administered by Title IX staff does not comport with the role of the Title IX

Coordinator to act as a neutral administrator. Instead, this was a fact finding mission. Due to the

questioning which occurred during the interrogation, Plaintiff expressed his concerns in writing

that not only had his rights been violated, but he feared that the information which gave rise to the

accusation against him was obtained during the interrogation. As such, Plaintiff had expressed

that he did not have confidence that the Title IX office could properly serve as neutral

administrator given the conspiratorial actions of Ms. Siler in concert with Marta Esquilin.

61. Plaintiff also made clear in writing to the Title IX Coordinator, Ms. Rooker, that he and Ms.

Esquilin at the time had a strained relationship. He wrote to Ms. Rooker that he had been in

discussions with Marta for several months regarding the hostile environment created by some of

the behaviors exhibited by certain members of the Columbia University Hip Hop Society against

the Gay and Lesbian Community. She was unwilling to address these issues which had resulted

in a deep personal conflict between herself and Plaintiff. Plaintiff informed Ms. Rooker that he

feared Marta interjected herself into this matter in order to retaliate against him.

62. Plaintiff wrote to Ms. Rooker that he would appreciate if she would look into whether the report

she received was directly related to the interrogation that occurred on October 5, 2012, and

requested that should that be the case, for the matter to be dismissed or reassessed given those

facts.

63. In addition on October 23, 2012, Plaintiff responded with the following within five business days to

the October 19, 2012 allegations:

"<u>Response to October 19, 2012</u>. In response to the accusation contained in your October 19, 2012, correspondence I deny having engaged in any behavior that violated the Columbia University Gender-Based Misconduct Policies for Students.

The accusation lacks specificity *(i.e., Who is the Complainant,* Jack Doe *or a Third Party?; What date and time did the alleged behavior take place?; Where did the alleged behavior occur?; What specifically constituted the alleged behavior, touching, kissing, etc.)* sufficient to provide me with the detail needed to respond further to the accusation and to provide you with additional information that might help with the investigation or which would help in proving my innocence. I would appreciate it if you would provide me with greater detail about the accusation so that I might engage in a meaningful discussion with the investigator and so that I might provide you with additional information.

Finally, I am troubled by a policy which makes the assumption that you are guilty until proven innocent. As a result of the accusation, I have been displaced from my place of residence; I have been escorted from the premises by law enforcement officers; I have been subjected to a hearing panel for failure to comply with an unreasonable time frame to remove my belongs from the premises of a building that I am prohibited from entering; I have been accused of failing to comply with the directive of a University Official. All of this has happened, even before I was given the opportunity to respond in writing to the accusation and before concluding the investigation. Given the totality of the circumstances, I question the motives of those involved in making the accusation against me, an African American male homosexual student. However, despite the unfairness of this process, I have every intention to cooperate with your office to the best of my ability. It is my desire to resolve this matter in an expeditious manner and to clear my name. I would appreciate a written response to the questions that I have raised and would appreciate any additional information regarding the accusation. Thank you kindly for your assistance."

64. Moreover, during the Title IX investigatory phase Plaintiff reported to Ms. Siler, a white woman and the Title IX investigator, that he was the victim of a sexual assault in the Lerner Hall lower-level bathroom on September 7, 2012. The interviews with Ms. Siler were not recorded. She took

handwritten notes. Ms. Siler took notes of this concern but did not follow up or offer resources, and she did not take Plaintiff's complaint seriously, and it felt to Plaintiff as if she was not taking note of Plaintiff's concerns. She asked no follow up questions. Plainiff argues in this instance that Defendant Columbia's actions and inactions after reporting the assault by Assailant 1 (Assailant 1 ⬛⬛⬛) denied Plaintiff the benefits of, and subjected him to discrimination in his education at Columbia on the basis of his sexual orientation.

65. In fact, Ms. Siler, before she was replaced, exhibited a pattern of grossly mishandling serious Title IX concerns at Columbia. *See John Doe v. Columbia University, 15-1536 (L) (2d Cir. 2016)*; "(Plaintiff reported to Siler that Jane Doe's friends had harassed and assaulted him on campus. Siler "did not take [his] complaint . . . seriously." A 91-92).

66. By failing to properly investigate Plaintiff's sexual assault, Plaintiff alleges that Defendant Columbia's pattern and practice of behavior designed to discourage and dissuade students from seeking prosecution and protection chilled reporting and substantially increased the risk that Plaintiff and others would be sexually assaulted again. This practice of behavior or custom constituted disparate treatment of victims and a disparate impact on victims.

67. Furthermore, since this revelation was made during an investigative process into the Plaintiff, he felt an increased level of intimidation and risk of retaliation, as Defendant Columbia has a custom and practice of mishandling and outright ignoring Title IX misconduct.

68. Defendant Columbia and its staff, and highest officers, with knowledge of numerous and detailed reports of sexual assault, maintained a set of policies, procedures and customs that were implemented in a sexually discriminatory manner and permitted a campus condition rife with assault that substantially increased Plaintiff's chances of being sexually assaulted again.


**BREACH OF CONFIDENTIALITY/PRIVACY & RETALIATION**


69. *"Pursuant to Columbia University's Gender-Based Misconduct policy and procedures, the University will make all reasonable efforts to maintain the confidentiality/privacy of parties*

*involved in gender-based misconduct investigations. Breaches of confidentiality/privacy or retaliation against any person involved in the investigation, including the complainant, **respondent**, witnesses, or the investigators, may result in additional disciplinary actions.*" As a result of this accusation, Plaintiff was retaliated against, and further to this, there was a breach of the confidentiality agreement which Columbia took no steps to rectify.

70. Plaintiff met with Assistant Dean Jeri Henry on Monday, October 22, 2012. She inquired as to when Plaintiff might be able to move his belongings out of the Intercultural House. In an attempt to comply with this matter, Plaintiff told her that he would try to move them out by 1pm on the 22nd, but that he needed to talk to Victoria Lopez-Herrera, the Graduate Hall Director of the Intercultural House to coordinate the move and entry into his old room. Plaintiff received a return call from Victoria at 5pm to coordinate the move. Plaintiff told Victoria that he needed to talk with his friends to see when they would be available to assist. Due to mid-terms and Homecoming weekend, Plaintiff's friends were not available to assist with the move until the next day, Tuesday, after 7pm. Victoria indicated that this was acceptable and "was not an unreasonable request" given the circumstances. Plaintiff then forwarded a message to Dean Henry asking whether this change was acceptable. Dean Henry, writing to no less than eight (8) persons, responded with a lengthy missive including: *"Your message underscores the fact that you show little regard for the situation and [...] you continue to monopolize staff time and resources."*

71. This email was copied to no less than eight (8) persons including Plaintiff's academic advisor and an assistant dean for community development, among others. This violation caused unwanted attention, emotional and physical distress, mental anguish, humiliation and embarrassment. Plaintiff notified Ms. Rooker in writing that he feared that any privacy or confidentiality protections afforded under the school policy are no longer in place given the number of individuals who received this communication. That situation has caused Plaintiff a great deal of emotional distress, yet he reiterated again in writing that he had every intention to comply with what the office had requested and had taken reasonable steps to do so. In addition, Plaintiff fears that he was retaliated against which is a direct violation of the Gender-Based Misconduct Policy. He was informed on October 23, 2019 that he was to appear before a Deans' Discipline hearing panel, a

process which is overseen by Jeri Henri, to discuss the "**failure to comply with the directive of a University Official."** Plaintiff assumed that this referred to his inability to move his things out of his dorm room at the time prescribed. It is clear that this hearing panel was initiated by Dean Henri. Plaintiff considers this a clear act of retaliation in violation of the University policy.

## PROCEDURAL CONCERNS DURING THE 2013 ACADEMIC YEAR INVESTIGATION AND SEVERE EMOTIONAL DISTRESS AND SUICIDAL IDEATION

72. Due to the overwhelming psychological stress Plaintiff experienced due to Columbia's actions and inactions, he was forced to take a psychological medical leave for the 2012-2013 academic year.

73. For several months following the false allegation of non-consensual sexual contact and Columbia's negligence, dishonesty and gross mishandling of the investigation and proceedings, Plaintiff experienced panic attacks and anxiety, for which he continues treatment today.

74. Upon returning home on his psychological leave in late November 2012, Plaintiff attempted suicide. He was transported by ambulance to an emergency psychiatric unit at a hospital and committed for several days. Since then and to this day, Plaintiff has been under the care of no less than eight (8) psychiatrists and psychiatric counselors in his course of treatment since he began experiencing severe psychological trauma, anxiety, helplessness and panic attacks, the latter which has required multiple emergency hospitalizations, a regime of daily medications, and bi-monthly appointments all of which began in early November 2012.

75. Defendant Columbia exhibited bias based on Plaintiff's sexual orientation during the disciplinary action by the differential treatment he and Jack received in that, among other things, John's mental state deteriorated and he suffered extreme sense of hopelessness, as if his life had no meaning as a result of the sex-based prosecution during his Fall 2012. In Summer 2015, when Defendant Columbia abused its office to launch another Title IX action, John again suffered extreme psychological consequences from Columbia's mishandling of that action.

76. Upon returning to campus in Fall 2013, the investigation into the events of the evening of September 7, 2012 continued. During the investigatory phase, Complainant Jack Doe conceded that the kiss was indeed consensual. However, Plaintiff was according to university documents, now being investigated for sexual assault: non-consensual sexual contact in allegedly "grabbing the arm of" Jack Doe in some unspecficied manner, in some unspecified context and at some unspecified time; whereas before Plaintiff's psychological leave he was being investigated by Defendant Columbia for an alleged non-consensual kiss. One year later, Defendant Columbia would deceitfully supplant that false accusation with another, which caused Plaintiff dismay. Even though Jack Doe's consensual experience with John (some consensual kissing) clearly did not rise to a violation of Columbia's Title IX policies, John continued to participate in the Fall 2013 investigatory process to clear his name. Plaintiff alleges that Columbia warranted an investigation of "grabbing the arm" of Jack Doe, but did not warrant an investigation into Assailant 1's sexual assault of John because the person on the recieving end of such sexual abuse was an African-American gay male.

77. Jack Doe changed his story during the course of Title IX 1 while John was on a psychological medical leave and reported a false version of events in which John "grabbed [his] arm" in some unspecified way at some unspecified time in an unspecified location. This allegation formed the basis of Defendant Columbia's Fall 2013 continuing investigation into John, yet John did not receive a notice of allegations or complaint with details of this new allegation. Throughout the resumed investigation at John's return to campus, the Title IX office brought no further attention to the initial October 2012 allegation of kissing, nor to John's revelation of having been sexually assaulted on September 7, 2012. Columbia gives preferential treatment and advantages to its white students and did not exercise fair and equal treatment to John when he alleged he was the victim of sexual assault.

78. John was invariably found responsible, regardless of the evidence, or lack thereof.

79. Jeri Henri, who previously violated Plaintiff's right to privacy, breached his right to confidentiality in the Title IX proceeding, and launched a frivolous Dean's Discipline process against him, advised him at the outcome of the proceeding on December 9, 2013 that he was not to appeal

the decision, stating that "You got lucky, and you'll get suspended or worse on appeal to your dean."

80. Plaintiff contacted and met with Columbia's ombudsman regarding Jeri Henri's comments but no official administrative action was taken. Plaintiff also reached out to other senior administrators regarding the deceptive administrative misconduct of Ms. Rooker in concert with Ms. Siler and Ms. Henri, but these emails were not responded to, no resolutions were offered and no actions were taken.

### PROCEDURAL CONCERNS REGARDING THE JULY 2015 ACCUSATION AND REPORTS ("SECOND TITLE IX ACTION" or "TITLE IX 2")

81. Columbia University's Title IX office would again discriminate against Plaintiff and treat him with astonishing indignity in a July 2015 proceeding involving a summer employee ███████ ██████ ("Assailant 2", "████████████████") who physically assaulted Plaintiff while the two were on a date in Bryant Park, Manhattan. This was Plaintiff's second assault reported to Columbia, for which Columbia took no action.

82. Plaintiff and Assailant 2 lived on the same floor in a university residence during the summer of 2015. Plaintiff and Assailant 2 developed a friendship during the months of June and July 2015, and Assailant 2 helped Plaintiff with an off-campus move during Columbia's summer session.

83. Assailant 2 was an undergraduate at the University of Virginia and a Columbia employee pursuing a summer research internship at Columbia. Plaintiff was a Columbia undergraduate pursuing a research associateship at Columbia.

84. On July 8, 2015, after drinks at the Columbia Club in Midtown Manhattan, the two men consumed wine with dinner at public courtyard seating outside a restaurant in Bryant Park. At one point in the evening, Plaintiff, who was seated diagonally to Assailant 2, leaned in for a kiss. At the time, Assailant 2 was not interested in Plaintiff's advance. The two continued to eat dinner and consume wine. At one point, Plaintiff asked Assailant 2 if he needed a glass of water. Plaintiff went into the restaurant to

get ███ a glass of water, and as he returned with the water he saw ███ walking away from the

table across Bryant Park. Concerned about █████ welfare, Plaintiff approached him and asked if

he was okay. ███ turned around, physically assaulted and punched the Plaintff to the ground,

and yelled "You're trying to rape me." Plaintiff proceeded to crawl away from █████ and shelter his

body from further attack.

85. Police and ambulance arrived on the scene as Plaintiff communicates to officers that he is

worried for █████ well-being. The officers advise Plaintiff to leave the park because ███ was

making statements such as "He tried to rape me". Plaintiff proceeds to NewYork-Presbyterian

Hospital to seek treatment for a lacerated, bloodied and swollen lower lip, for which he spent

hours under emergency care. Plaintiff also filed a police report of the incident with the 26th

Precinct.

86. Plaintiff sought follow-up medical attention through Columbia Health Medical Services. Even after

providing the university his medical records and photos of his bloodied, lacerated mouth, Plaintiff

was not supported as a victim and his reports were not investigated. Instead, Columbia

discouraged Plaintiff from reporting his assault, failed to adequately investigate each of the

assaults, misled and lied to Plaintiff about his options for reporting and accomodations. In this

manner, Columbia actively fostered an unsafe and hostile academic environment and living

environment with profoundly severe psychological damage and distress negatively affecting

Plaintiff's future relationships.

87. On July 9, 2015, Plaintiff filed three reports regarding the incident: an online report of gender-

based misconduct with the Student Conduct and Community Standards office (the Title IX office),

a report with the Columbia police department (Columbia Public Safety), and a police report. In an

incredible contravention of Columbia's August 2014 Gender-Based Misconduct policy and

procedures, neither of the Columbia reports were investigated. Specifically, Plaintiff's assailant (a

non-student employee at Columbia) was not investigated nor disciplined under the disciplinary

procedures that applies to Columbia employees and other persons doing business with Columbia

as described in Columbia's Employee Policies and Procedures on Discrimination, Harassment,

Sexual Assault, Domestic Violence, Dating Violence, and Stalking ("Columbia Employee policy").

88. Per the Columbia Employee policy, "*The University requires management and supervisory personnel to report any instance or allegation of prohibited conduct by an employee or third party that is disclosed to, observed, or otherwise known by him or her to EOAA and/or his or her designated human resources representative, who will report to immediately and coordinate with EOAA regarding the appropriate University response.*"

89. The only communication Plaintiff received from Columbia regarding his complaints was a two-sentence email from Peter Krates of Columbia's Student Conduct and Community Standards. Upon Plaintiff's following up multiple times on his report, thirteen (13) days later he finally received a communication confirming receipt of his July 9, 2015 complaint from Mr. Krates; whereby on July 22, 2015 Mr. Krates wrote *"Ms. Barnett (the Title IX investigator) will address your concerns during your meeting with her."* Plaintiff's concerns were never addressed. No investigation was ever commenced. In this manner, Columbia administrators and office staff misinformed Plaintiff and concealed information about additional reporting options, accomodations available under Title IX, and the availability of investigatory actions that could be undertaken by the university. Furthermore, Defendant Columbia exhibited a deliberately indifferent response to each of Plaintiff's reports which deprived him of educational opportunities and benefits provided by the school.

90. In fact, Columbia launched an egregious investigatory process against Plaintiff for sexual assault in connections with his assailant's claim of rape, a false allegation for which Plaintiff was found not responsible. At no point in the hearing did Columbia allow John to assert his accusations against Assailant 2 that he had assaulted him. Columbia did not bring any charges against Assailant 2 in connection with John's allegations even though such actions involved violent physical force which caused John serious trauma and injury.

91. At the conclusion of Plaintiff's being found not responsible by the Title IX investigator of his assailant's claim of rape, Ms. Barnett (the Title IX investigator) made the extra effort to verbally inform Plaintiff that his assailant would indeed be continuing his research at Columbia. Due to Columbia's deliberate indifference, Plaintiff's assailant remained a beneficiary of employment at Columbia after causing Plaintiff, a Columbia student, severe physical harm and hospitalization

and resultant psychological distress. In effect, Columbia's actions and inactions created of a

hostile academic and living environment which further caused Plaintiff trauma and psychological

stress, and experiences of helplessness of unsafety and the threat of continuing assault.

92. Plaintiff argues in this instance that Defendant Columbia's clearly unreasonable actions and

inactions after reporting the assault by Assailant 2 (███████████) here again denied Plaintiff the

benefits of, and subjected him to discrimination in his education at Columbia on the basis of his

sexual orientation, and failed to take steps to ensure that Plaintiff would not be subected to

continuing assault and harrassment.

93. Columbia University's Employee Policies and Procedures on Discrimination and Harrassment

state, among other things: According to page three (3) of Columbia's Employee policy, "*Federal*

*law sets forth specific requirements for addressing allegations of sexual assault, domestic*

*violence, dating violence, and stalking, as well as allegations of other types of gender-based*

*misconduct (including gender-based harassment, sexual harassment, and sexual exploitation)*.";

and the **Duty To Act section of the policy** on page eight (8) reads "*Management and*

*supervisory personnel are expected to take reasonable and necessary action to prevent*

*discrimination and harassment, to take appropriate action when they learn directly or indirectly of*

*conduct that might violate University policies, and to respond promptly and thoroughly to any*

*such claims. A manager or supervisor who fails to take appropriate action may be found to have*

*violated Columbia's policies even in situations where the underlying event does not constitute*

*discrimination or harassment.*"; and under the Procedures for Complaints of Prohibited Conduct

section on page eleven (11) the policy reads "*The University takes allegations of prohibited*

*conduct very seriously, and will actively investigate all alleged discrimination and/or harassment,*

*even in the absence of a complaint, and will take remedial action where appropriate*, and "*Upon*

*receiving notice or otherwise learning that a University employee or third party has allegedly*

*engaged in prohibited conduct, EOAA will initiate an investigation.*"

94. In this manner, under New York's common law, "[t]he elements of a cause of action alleging

common-law negligence are a duty owed by the defendant to the plaintiff, a breach of that duty,

and a showing that the breach of that duty proximately caused injury to the plaintiff." Merchants

Mut. Ins. Co. v. Quality Signs of Middletown, 973 N.Y.S.2d 787, 788 (N.Y. App. Div. 2013). Columbia was negligent in its duty to act "*to take appropriate action when they learn directly or indirectly of conduct that might violate University policies, and to respond promptly and thoroughly to any such claims.*"

95. Plaintiff alleges that Columbia's clearly unreasonable failure to promptly and appropriately investigate and respond to student sexual and physical assaults of which it had actual knowledge substantially increased the risk of sexual and physical assault for Plaintiff and for all gay students at Columbia.

96. Plaintiff alleges that Columbia owed Plaintiff a duty of reasonable care and that it breached these duties in multiple ways, which fall into three categories: (1) Columbia's duty to protect Plaintiff from the criminal acts of others to the extent those acts were foreseeable (2) Columbia's duty to adequately hire, train and supervise its employees regarding how to properly handle reports of sexual assault or physical assault and (3) Columbia's other duties of care.

97. Columbia had a responsibility of care due to its special relationship with its students because "one who controls the premises has a duty to use ordinary case to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." Lefmark Mgmt. Co. v. Old, 946 S.W.2d 52, 54 (Tex. 1997).

98. Furthermore, based on the information in the university policies, it was incumbent upon university administrators to take appropriate action in reporting Assault 1 and Assault 2. The lack of proper procedure by Defendant Columbia's employees constitutes a failure to meet the standard of care for universities in hiring, training, and supervising employees, extending to how employees handle reports of sexual assault and physical assault.

99. None of these standards of care and responsibility on behalf of the university were met in this July 2015 instance, echoing sentiments of Columbia's October 2012 adverse Title IX actions against Plaintiff in violation of his rights enumerated in Titles VI and VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the New York State Human Rights Law, New York Education Law, the New York City Human Rights Law, and other equal opportunity, nondiscrimination, and affirmative action laws, which prohibit discrimination and harassment

against protected classes in employment and educational programs and activities. Defendant

Columbia's actions and inactions have caused Plaintiff severe physical and mental health

impairments that continue today.

100.     In bringing Title IX 2, and precluding an investigation into Assailant 2 when the person on

the receiving end of his assault is an African-American male, Columbia established a pattern that

it considered the black male as a sexual predator and a danger. John feels traumatized by

Columbia's pervasive structural racism in the context of its actions and inactions with respect to

the aforementioned investigations. Columbia did not concede in either Title IX matter that John's

claims were viable because as a gay African American, John is a sexual predator and a danger.

101.     Columbia created an environment where an accused gay male is fundamentally denied

due process by being prosecuted through the conduct process under a preseumption of guilt.

Such a one-sided process deprived John, as a gay black student, of educational opportunities at

Columbia on the basis of his sex and race.


**DEFENDANT COLUMBIA'S VIOLATION OF ITS OWN POLICIES**

102.     On numerous prior occasion, and specifically on October 18, 2016, the United States

Department of Education's Office for Civil Rights initiated an investigation into Columbia for the

way that the school responded to a student-plaintiff's reports of rape and sexual assault.

103.     As a result of the University's response, and lack of response to Plaintiff's reports that he

was both sexually and physically assaulted, Plaintiff has suffered psychological and emotional

damages, and has experienced a loss of educational opportunities and/or benefits.

104.     Columbia violated several of its own policies in its response to Plaintiff's reports that he

was sexually and physically assaulted on two separate occasions. Specifically:

    a.   Despite the requirement that non-confidential employees report sexual misconduct to the

       Gender-Based Misconduct Office, neither Siler nor Krates reported or responded to

       Plaintiff's incidents of sexual assault and physical assault.

    b.   To plaintiff's knowledge, Columbia did not initiate an investigation of either incident.

c. Columbia failed to work with Plaintiff to ensure his safety and promote his well-being after learning of his incidents of sexual and physical assault.

d. In its response to Plaintiff's reports of sexual assault, Columbia violated the United States Department of Education's Office of Civil Rights Dear Colleague Letter of April 4th, 2011 and Questions and Answers in several ways, including, but not limited to failing to promptly and equitably investigate Plaintiff's allegations and reports.

## DEFENDANT COLUMBIA'S CREATION OF A HOSTILE EDUCATION ENVIRONMENT, AND DENIAL OF PARTICIPATION IN EDUCATIONAL OPPORTUNITIES

105.     In November 2015, Plaintiff sought to attend an educational event at Columbia University, specifically a teach-in in his former residence hall the topic of which was identifying the problems students face as a community on Columbia's campus.

106.     However, due to a PNG interim measure from the first Title IX action, Plaintiff's swipe card did not allow him access to his former residence hall. This was put in place because the complainant in the first Title IX action also lived with Plaintiff-respondent in the IRC residence hall.

107.     In November 2015, Plaintiff contacted Columbia administrators to request removal of the PNG designation from his former residence hall so that he could attend the educational event.

108.     Although Jack Doe had graduated and no longer resided on Columbia's campus, Columbia still would not allow Plaintiff to attend the educational event, informing him that he was still a PNG of the IRC residence hall.

109.     This administrative inaction from a Title IX procedural error brought to attention prevented Plaintiff from equal participation in an education opportunity sponsored by Columbia, amounting to post-abuse discrimination of which Plaintiff now has knowledge due to conversations with legal counsel in November 2019.

110.     Taken together, Plaintiff pleads that he did not know, nor could he have known, and to an extent still does not know, with regard to the heavily redacted first Title IX Complaint and action : 1) critical facts that he has been hurt and who has inflicted the injury and 2) that high-ranking

Columbia administrators made conscious and deliberate decisions and engaged in unspecified impermissible conduct to create and cover-up Title IX and other federal abuses at anytime before his conversations with legal counsel in November 2019, when it was revealed to Plaintiff that his constitutional right to be free from sex-based discrimination ("based on sexual orientation") perpetrated by a school, and other forms of discrimination had been violated. *See e.g., Hawkinson v. Montoya,* 385 Fed. Appx. 836, 841 (lOth Cir. 2010); *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir. 1992) ("Civil rights claims ... accrue when the plaintiff knows or should know that his or her constitutional rights have been violated.").

111.     Indeed, in the years since Plaintiff's first Title IX action in Fall 2012, scores of other Columbia students have made at least twenty-three (23) complaints and have sued the university for violations of Title IX, but no inquiry by Plaintiff would have disclosed Columbia's official decisions to discriminate against other Plaintiffs and other Columbia students. Yet, Columbia officials continue to praise, honor, employ and promote these known intentional discriminators and violators of education law and student rights.


## CAUSES OF ACTION


### COUNT I.

### 20 U.S.C. § 1681 *et seq*

### TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

### Hostile Education Environment/Sexual Harassment


112.     Plaintiff realleges and incorporates all the allegations contained in the preceding paragraphs of this Complaint as though fully rewritten herein.

113.     Title IX of the Education Amendments of 1972 provides, in relevant part, that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

114.     Defendant Columbia receives federal assistance for research and development. Plaintiff's sexual orientation is protected by Title IX. During the events herein, John was a matriculated student and in attendance at Columbia.

115.     Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX of the Education Amendments of 1972, even though there is very little direct federal funding of school sports. Upon information and belief, Columbia receives nearly $645,000,000 in federal funding for research and development.

116.     Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student [...] complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § *54.135(b)* (Dep't of Justice). Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape. *See U.S.* Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX (2001) at 19-20,21 & nn. 98-101*.

117.     The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also "accord[] due process to both parties involved..." U.S. Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX (2001) at 22.*

118.     *A* school also has an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes "alleged sexual assaults." U.S. Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX (2001) at 21.*

119.     John was subject to harassment from Assailants 1 and 2 when these men sexually and physically assaulted him, respectively by recording a lewd video of a sexual nature without his

consent in the former and in the latter physically assaulting him and drawing blood from his lip by

punching him to the ground requiring hospitalization, all without Plaintiff's affirmative consent.

Upon Plaintiff's reporting of this misconduct, Columbia administrators did nothing.

120.      Defendant Columbia's negligence was sufficiently severe and or pervasive to alter the

conditions of Plaintiff's education and created an abusive educational environment for Plaintiff

and constituted a continuing violation.

121.      Plaintiff reported the sexual-orientation-based harrassment within the IRC, the sexual

assault and the physical assault to representatives of Columbia who had authority and a duty to

act to address the discriminatory harrassment.

122.      Columbia's representatives failed to adequately respond to or address the harassment.

Indeed, Columbia's representatives acted with deliberate indifference with respect to the sex-

based ("based on sexual orientation"), sexual and physical harassment of Plaintiff.

123.      Moreover, to this day, details remain largely redacted regarding the first Title IX action

and Plaintiff was at no point in receipt of an unredacted version of the Title IX complaint. Because

of this, Plaintiff pleads to invoke the equitable tolling doctrine of fraudulent concealment, because,

again, Plaintiff alleges facts from which the Court can reasonably infer that Plaintiff could not have

discovered his post-reporting causes of action in the exercise of due diligence.

124.      Columbia's conduct as set forth herein was in violation of Title IX's strictures against

intentional discrimination and against sexual harassment and Columbia is liable to Plaintiff.

125.      Indeed, whereas Columbia has the right and does initiate Title IX disciplinary actions on

behalf of alleged white victims of sexual harassment, Columbia did not bring an action against

Assailant 1 or Assailant 2 on John's behalf. Moreover, Columbia disallowed John from asserting a

claim against Assailant 2 in connection with his allegations.

126.      Columbia's conduct as set form herein was in violation of Title IX's strictures against

sexual harassment and Columbia is liable to Plaintiff.

127.      By reason of the sexual harassment Plaintiff has suffered and continues to suffer, and

Plaintiff is entitled to all legal and equitable remedies available under Title IX, including and aware

of punitive damages, attorney's fees and costs.

128.     Based upon the forgoing, as a direct and proximate result of the Defendant's conduct as

alleged above, Plaintiff's academic and career prospects, earning potential, and reputation have

been severely harmed and he has suffered loss of educational and professional opportunities,

loss of future career prospects, and other direct and consequential damages and has suffered

damages including extreme emotional distress, and loss of capacity for the enjoyment of life.

129.     By reason of the forgoing, Plaintiff is entitled to all legal and equitable remedies available

including an award of all applicable damages, prejudgment interest, attorneys' fees, costs and

other compensation in an amount to be determined upon the trial of this action.

### COUNT II.

### 20 U.S.C. § 1681 *et seq*

### TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

### Intentional Discrimination on the Basis of Sexual Orientation, and Fraudulent Concealment

130.     Plaintiff realleges and incorporates all the allegations contained in preceding paragraphs

of this Complaint as though fully rewritten herein.

131.     Title IX of the Education Amendments of 1972 provides, in relevant part, that: No person

in the United States shall, on the basis of sex, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any education program or activity receiving

Federal financial assistance.

132.     Defendant receives federal financial assistance for research and development.

133.     Plaintiff's sexual orientation is protected by Title IX and during the events herein, John

was a matriculated student and in attendance at Columbia.

134.     Defendant discriminated against Plaintiff by permitting a pattern or practice of

discrimination based on sexual orientation against John in violation of Title IX as set forth herein.

135.     Such pattern or practice constitutes a continuing violation and Columbia is liable to John

from September 2012 when John first reported sex-based ("based on sexual orientation")

discrimination to dean Aquino, to the end of the second Title IX proceedings against John by

complainant Assailant 2, in which Columbia discriminated against John, a gay male, in

disallowing him from filing a complaint and instead deciding to investigate him for a false

allegation, while allowing his Assailant, heterosexual male to file and investigate a complaint. This

continuing violation persists to the present day due to the heavily redacted Complaint and

disinformation campaign Columbia administrators commenced and continued through the time of

this writing.

136.    However, Plaintiff's complaint that Assailant 2 violated Columbia's policies regarding

sexual misconduct, dating violence, physical assault and breach of community standards were

treated with deliberate indifference by Columbia's representatives.

137.    In contrast, Columbia investigated and heard Assailant 2's Title IX allegations against

John and pursued the assailant's complaints.

138.    Moreoever, before the first Title IX investigation in 2012, John made multiple overtures to

Columbia's representatives to implore them to stop the sex-based ("based on sexual orientation")

discrimination that was occuring within his residence hall.

139.    Columbia's indifference in both instances adversely affected John as a gay male and he

was vulnerable to a) the constant sexual harrassment of the CUSH rap music group in his

residence hall b) a subsequent sham investigation for kissing a male student b) a sanction on his

academic record c) a second incredulous investigation of wildly false rape allegation during a

dinner date in Bryant Park, where John was actually physically assaulted d) threats of discplinary

actions and e) numerous violations and breaches of contract.

140.    Moreover, John was investigated in the second Title IX proceeding for a false violation of

Columbia's policies because Columbia pursued Assailant 2's allegations against John, but not

John's allegations against his Assailant. Furthermore, in the first Title IX action Columbia flatly

refused to investigate John's allegations of sexual assault by Assailant 1, yet Columbia pursued a

third-party complaintant's allegations against John.

141.    Columbia was also deliberately indifferent to John's claims that Columbia administrators

a) breached their duty to uphold to confidentiality of the proceeding b) violated the Respondent

Rights afforded to John under Columbia's own Title IX policies and procedures and c) refused to

alleviate the constant sex-based ("based on sexual orientation") harrassment John was

experiencing while a resident in the IRC and d) refused to allow John participation in an

educational activity on the basis of his sexual orientation.

142.      Columbia discriminated against John's sexual orientation and detrimentally and adversely

affected Plaintiff's education because he is a gay male.

143.      Defendant Columbia's pattern or practice of sex-based discrimination was intentional,

deliberate, willfull, malicious, reckless, and conduct in callous disregard for Plaintiff's rights,

entitling Plaintiff to punitive damages.

144.      As a direct and proximate result of Defendant's aforementioned conduct, Plaintiff has

suffered extreme emotional and physical distress, mental anguish, humiliation and

embarrassment.

145.      By reason of the continuous nature Defendant's discriminatory conduct, persistent from

when he was sexually assaulted in September 2012 through February 2016, and to the present

day (due to Columbia's persistent and fraudulent concealments, continued misrepresentations of

fact and deceptive conduct since the first Title IX action) Plaintiff is entitled to the application of

the continuing violation doctrine to all of the violations alleged herein.


Title IX Claim Statute of Limitations - Discovery Accrual Rule and Equitable Estoppel

146.      Plaintiff alleges that equitable estoppel and federal discovery rule apply to all counts in

his pleading.

147.      Title IX claims generally accrue "when it comes into existence," i.e., "when the plaintiff

has a complete and present cause of action." Gabelli v. S.E.C., 133 S. Ct. 1216, 1220 (2013). An

exception—the discovery accrual rule—has been applied in certain circumstances, such as

where a "defendant's deceptive conduct may prevent a plaintiff from even knowing that he or she

has been defrauded." Id. Under the discovery accrual rule, a cause of action accrues "when, with

reasonable diligence, the plaintiff has or should have discovered the critical facts of both his injury

and its cause." A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 140 (2d Cir. 2011). Plaintiff

must be able to ascertain the cause of his injury before federal claim can accrue. See *US. v. Kubrick,* 444 U.S. 111, 123-24 (1979)

148.     As a matriculated student at Columbia University paying tuition and other educational costs to the university, Defendant Columbia had a fiduciary relationship and reasonably relied on defendant's due diligence, but also its misrepresentations and active concealments in its bringing a false and heavily redacted Title IX complaint against Plaintiff; this fiduciary duty gave Defendant Columbia an obligation to inform Plaintiff of all relevant facts underlying the Title IX complaint.

149.     Federal claims do not accrue when defendants maintained exclusive control of the facts about causation. Unlike Title IX, the Federal Tort Claims Act is a two year accrual provision. By its express language [28 U.S.C. § 2401(b)], therefore, a claim under the FTCA accrues on the date that a plaintiff discovers that he has been injured, except where plaintiff would reasonably have difficulty discerning the fact or cause of injury at the time it was inflicted. In that case, the diligence-discovery rule of accrual--in which "accrual may be postponed until the plaintiff has or with reasonable discovery should have discovered the critical facts of both his injury *and its* cause"--applies. *Kronisch v. U.S.,* 150 F.3d 112,121 (2d Cir. 1988). In Kubrick, as the Supreme Court explained: The fact of injury may not manifest itself for some time after the act that caused it and "the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff."

150.     It is a fact that the heavily redacted third-party Complaint was used throughout the abusive, unfair and deceptive Title IX 1 investigatory process, as its genesis beginning with the first notice of allegations on October 19, 2012, and the second allegation in Fall 2013, to the investigatory report and finally by the sanctioning hearing panel.

151.     Plaintiff was found responsible for sexual assault: non-consensual sexual contact on December 9, 2013 and issued a sanction of discplinary probation on December 18, 2013.

152.     It is a fact that Defendant Columbia used a carefully redacted third-party Complaint in part to prevent Plaintiff from learning of the true facts of his claims; *Erbe v. Lincoln Rochester Trust Co.,* <u>13 A.D.2d 211</u>, 214 N.Y.S.2d 849, 852 (1961) ("[I]t should not be held that a trustee can take advantage of the limitations statute when the beneficiaries of the trust may have been

led to believe that there was no breach of the relationship by statements of false facts *or concealment of true facts* by the fiduciary." (emphasis added)).

153.     Despite multiple meetings and calls with Title IX coordinators Ms. Rooker and her two consecutive replacements, and other requests for information from Defendant Columbia, Plaintiff was never informed of the identity of his accuser(s) (potential abuser(s)), nor other information relevant to the allegation. Upon information and belief, Defendant Columbia and its administrators redacted large portions of the false Title IX complaint against Plaintiff to make affirmative misrepresentations about the nature of the complaint and its actors; and to shield itself from a potential suit of timely action by Plaintiff, due to the precarious circumstance and characters in the underlying allegations and the combined misconduct and violations of Plaintiff's rights under Columbia's own codes and policies. Indeed, Plaintiff believes Defendant Columbia, for these reasons, altered the initial allegations from "kissing" to "arm-grabbing" while Plaintiff was on medical leave from the university.

154.     For the Title IX statute of limitations clock to start running, Plaintiff needed to know of both his Title IX injuries and injurers. *Singleton* v. *Clash,* 951 F. Supp.2d 578, 588, 588-89 (SDNY 2013) (Plaintiffs' Child Abuse Victims Rights Act [18 U.S.C. § 2255] claims accrued at the time plaintiffs "were aware of the *defendant's conduct towards them* and could have brought claims.") (emphasis added); *Koch* v. *Christie's International PLC,* 699 F.3d 141, 149 (2d Cir. 2012) (for Civil RICO claims, generally, it is "the discovery of the [RICO] injury *(and injurer)* ... that starts the limitations period running[.]") *(quoting, Jay E. Hayden Foundation* v. *First Neighbor Bank, N.A.,* 610 F.3d 382, 387 (7th Cir. 2010) (emphasis added)).

155.     The content of these false misrepresentations included a fraudulent and heavily redacted Complaint where it was alleged Plaintiff engaged in a non-consensual kiss. The Complaint did not include any details on where or when this misconduct allegedly occurred, but was reasonably relied on by Plaintiff throughout the investigatory proceedings as an expected source of truth, which the unredacted portions of the complaint generally lacked in their entirety. As a further misrepresentation to Plaintiff, Defendant Columbia completely altered and misrepresented the nature of the allegations in the initial redacted Complaint while Plaintiff was on medical leave, first

alleging non-consensual sexual contact (kissing) in Fall 2012, which was used as a pretense to
an interim measure to evict him from his resident housing, to then an allegation of non-
consensual sexual assault: "grabbing the arm of [Jack Doe]" in Fall 2013. Despite multiple
requests for information and clarification on the nature and timing of these allegations, Defendant
Columbia would provide nothing more than hidden, sparse and misleading responses. Plaintiff
reasonably relied on the whole of these many misrepresentations to make a defense during the
first Title IX proceeding, and reasonably relied on Defendant Columbia to be honest, transparent
and forthright in investigating and adjudicating Title IX claims. *See Beasley v. Alabama State
University,* 3 F. Supp.2d 1325, 1338 (M.D. Ala. 1998) (where the plaintiff alleges unlawful
discrimination under Title IX, the cause of action does not accrue until evidence of the school's
discriminatory conduct is "apparent or would have been apparent to a reasonably prudent
person."). A federal claim based on Title IX discrimination thus does not accrue until plaintiff
discovers, or with reasonable diligence should have discovered, the defendant's alleged
"discriminatory decision" that "effectively caused" his discrimination.

156.        At all times, due to the heavily redacted third-party Complaint and biased preliminary
investigatory report, and Defendant Columbia's deceptive conduct and concealment by failure to
provide Plaintiff's a complete and adequate notice of his injuries as required by Columbia's own
policies, Plaintiff was unquestionably unaware of critical facts of (1) his injuries and (2) the identity
of the third-party complainant whose report and/or behavior commenced his injuries; the
information provided by Defendant Columbia was insufficient to put Plaintiff on at least inquiry
notice as to their proximate cause and genesis as they occurred throughout the investigatory
proceedings, and as to Columbia's indifference to the scope of the abusive conduct by its
administrators and/or students, in whichever were the third-party complainants. The Complaint
and much of its crucial contents remain redacted as of this writing. See United States v. Kubrick,
444 U.S. 111, 122 (1979) (holding that claim under Federal Tort Claims Act accrued when plaintiff
possessed "critical facts that he has been hurt and who has inflicted the injury," and rejecting
argument that "plaintiff's ignorance of his legal rights" deferred accrual); Kronisch v. United
States, 150 F.3d 112, 121 (2d Cir. 1998) (instructing that claim accrues under discovery rule

when plaintiff discovers, or reasonably should have discovered, "enough of the critical facts of

injury and causation to protect himself by seeking legal advice" (internal quotation marks

omitted)); see also Stanley v. Trs. of Cal. State Univ., 433 F.3d 1129, 1136 (9th Cir. 2006)

(stating that Title IX claim accrued no later than plaintiff's unaddressed complaint of teacher's

sexual harassment); see also Singleton, 951 F.Supp.2d at 588 (quoting Rotella, 528 U.S. at 556,

120 S.Ct. 1075), ("This, [u]nder the discovery rule, a claim accrues when a plaintiff comes into

possession of the critical facts that he has been hurt and who inflicted the injury.").

157.     Plaintiff became aware of enough of his Fall 2012, Fall 2013 and Summer 2015 injuries

upon seeking legal advice in November 2019, which is the basis of this action.

158.     Furthermore, as pleaded in Count 1, to this day details remain largely redacted regarding

the first Title IX action and Plaintiff was at no point in receipt of an unredacted version of the Title

IX complaint. Because of this, Plaintiff pleads to invoke the equitable tolling doctrine of fraudulent

concealment, because, again, Plaintiff alleges facts from which the Court can reasonably infer

that Plaintiff could not have discovered his post-reporting causes of action in the exercise of due

diligence. In asserting fraudulent concealment as an affirmative defense to the statute of

limitations Plaintiff establishes that Defendant Columbia (1) was in two separate acts made aware

that a wrong occurred, one in Sep 2012 and the other in July 2015; (2) had a purpose to conceal

the wrong in the first action (in harming a gay student, or in protecting student-rapist Assailant 1

▆▆▆ and/or the scorned Columbia administrator Marta Esquilin); and (3) did conceal the wrong

by heavily redacting large portions of an official Title IX complaint against Plaintiff (wherein the

Title IX investigator advocated a disciplinary outcome) with those redactions remaining after

repeated attempts to exercise Plaintiff's respondent rights to view the entire complaint of

allegations against himself, and by making multiple misrepresentations to cover up the scheme (first

in Fall 2012 of accusing Plaintiff of non-consensual contact [kissing] then one year later accusing

Plaintiff of sexual assault [arm grabbing] under the same redacted notice of allegations).  "Where

a defendant has a duty to disclose the existence of a cause of action, but fraudulently conceals

the action from the party to whom it belongs, the defendant is estopped from relying on the

defense of limitations until the party either learns of its right of action or should have learned

through the exercise of due diligence." (*Kerlin*, 263 S.W.3d at 925; *see also Shah*, 67 S.W.3d at 841 ("Fraudulent concealment tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence."). Therefore the fraudulent concealment doctrine should toll the statute of limitations until such time as Plaintiff, with the exercise of the diligence of professional counsel, could be made promptly aware of Defendant Columbia's breach of contract (and deliberately indifferent response to Plaintiff's reports of sexual assault) and discover the wrongful conduct.

159.     "Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotation marks and citations omitted). "Due diligence on the part of the plaintiff in bringing [an] action, however, is an essential element of equitable relief." Id. (internal quotation marks omitted) (quoting Doe v. Holy See (State of Vatican City), 793 N.Y.S.2d 565, 569 (N.Y. App. Div. 2005)).

160.     The statute of limitations in this pleading and all relevant counts should be tolled by equitable estoppel, because Defendant Columbia in contravention of its published Gender-Based Misconduct policies provided plaintiff with a heavily redacted and wholly incomplete third-party Title IX complaint that was used in a hearing against Plaintiff, and about which potential causes for action such as administrator's violations of both Title IX and John's respondent rights under Columbia's policies where unknown at the time; insofar as a) in concealing information and failing to notify Plaintiff, Columbia did not alert Plaintiff of and did conceal from him the identity of the third-party complainant (was it the scorned and biased Columbia administrator Ms. Esquilin or John's assailant ███████ ("Assailant 1")) -- to this day this fact is unknown to Plaintiff even after, in the exercise of reasonable diligence in trying to discover John's civil cause of action, and in requesting numerous times for documents and information from the unredacted Complaint[3]; b)

---

[3] In view of these facts, the only reasonable inference that can and should be drawn is that, had Plaintiffs approached and hired attorneys prior to the three-year statute of limitations, these attorneys would have been met with the same stonewalling tactics, deceit, lies, threats, fraud, and concealment which Defendant Columbia perpetrated for years (at the life-long and considerable expense of Plaintiff's well-being), preventing Plaintiff from discovering and commencing his cause of action. *See TRW, Inc. v. Andrews,* 534

Plaintiff was not informed when and where the alleged violations occured, and why Columbia did

hide from Plaintiffs' knowing of these details; c) why Columbia did knowingly and fraudulently

conceal or alter and misrepresent material issues of fact in the allegations when it accused

Plaintiff of "non-consensual sexual contact: kissing", which Defendant Columbia then one year

later deceptively and speciously cause the redacted Complaint to be morphed into "grabbing the

arm" of Jack Doe, all while John was on psychological medical leave and a full year after the

initial (redacted) allegations; d) did Defendant Columbia include potentially actionable details

involving John's sexual assault in the redacted Complaint report, and did conceal helpful

investigatory content regarding John's sexual assault by Assailant 1; e) why did Columbia

knowingly misrepresent or conceal portions of the redacted Complaint to induce other parties in

the investigatory proceedings to rely upon this concealed information to Plaintiff's detriment; and

f) what lack of knowledge or other acts of concealment pursuant to pertinent and substantially

relevant information or behavior was redacted that may have unveiled further breaches of

contract, deliberately indifferent actions or inactions under Title IX and/or duties to act by

Defendant Columbia. *Schwatka v. Super Millwork, Inc.*, 965 N.Y.S.2d 547, 550 (App. Div. 2013).

"[F]raudulent concealment requires, in addition to allegations of scienter, reliance, and damages,

an allegation that the defendant had a duty to disclose material information and that it failed to do

so." *Id.* (quoting *High Tides, LLC v. DeMichele*, 931 N.Y.S.2d 377, 380 (App. Div. 2011)). "Claims

of fraud must be pled with particularity, under both New York and Federal rules of procedure."

*Boniel v. U.S. Bank N.A.*, No. 1:12-CV-3809 ERK MDG, 2013 WL 458298, at *2 (E.D.N.Y. Feb. 6,

2013) (citing Fed. R. Civ. P. 9(b) and N.Y. C.P.L.R. § 3016(b)).

161.        Also, "The doctrine of estoppel applies where plaintiff was induced by fraud,

misrepresentations or deception to refrain from filing a timely action and the plaintiff demonstrates

reasonable reliance on the defendant's misrepresentations. [...] To be successful, the party

seeking to invoke the estoppel doctrine bears the burden of demonstrating that it was diligent in

---

U.S. 19, 30 (2001) ("It is obviously unreasonable to charge the plaintiff with failure to search for the missing element of the cause of action if such element would not have been revealed by such search.") *(quoting, 2 C. Corman, Limitation of Actions, § 11.1.6, p. 164 (1991)).*

commencing the action within a reasonable time after the facts giving rise to the estoppel have

ceased to be operational. Where concealment without actual misrepresentation is claimed to

have prevented plaintiff from commencing a timely action, plaintiff must demonstrate a fiduciary

relationship exists, out of which an obligation arises to inform the plaintiff of facts material to the

underlying claim. In cases like the instant one wherein a fiduciary duty is owning from the

defendant, the plaintiff must establish that the defendant's failure to inform the plaintiff of material

facts contributed to the delay in bringing the action. (*North Coast Outfitters, Ltd. v. Darling*, 2013

NY Slip Op. 32731(U))

162.	Plaintiff has no knowledge of the identity of the third-party complainant, but in Defendant

Columbia's making of numerous misrepresentations and concealments of the identity of the third-

party complainant, it may be surmised that the third-party complainant was either Ms. Esquilin or

Assailant 1. Because the third-party complainant could have been an individual whose anti-gay

animus may have served the basis of her third-party complaint, Plaintiff alleges violations of Title

IX and discrimination on the basis of sexual orientation.

163.	Plaintiff reported to Columbia as set forth herein that he was being profiled on the basis

of his sexual orientation and stereotyped. Indeed, Plaintiff had theretofore previously complained

to Ms. Esquilin's superior, Dean Aquino, about her handling of matters involving allowing Plaintiff,

a gay male, in being precluded from joining a student extracurricular activity thereby causing

unequal educational and extracurricular participation opportunities on the basis of his sexual

orientation, and to suffer prejudicial conduct by other students in his residence hall on the basis of

sexual orientation. That neither Defendant Columbia's employees Dean Aquino nor Ms. Esquilin

reported Plaintiff's concerns about being denied participation in and subject to discrimination

under an education program at Columbia is another matter for the court to consider. But perhaps

this information was included in the Complaint.

164.	The redacted complaint may have obscured and served to hide the animus behind Ms.

Esquilin's anti-gay retaliation that could have served the basis of the false, fradulent third-party

complaint whose chief allegation was completely altered while Plaintiff was on medical leave,

engendering Title IX discrimination liability on the basis of sexual orientation. The harrassment

Plaintiff experienced on the basis of his sexual orientation, leading up to a false retaliatory complaint that may have been filed (*this information was redacted*) by an individual with anti-gay bias showed itself one day after Plaintiff published a pro-gay open letter to the house community over which she had administrative responsibilty. These events and their psychological impact on Plaintiff's health and academic studies forced the victim to withdraw from Columbia for the 2012-2013 academic year. When he returned in Fall 2013, the false allegations for which Plaintiff were being investigated were substituted for even more ridiculous claims.

165.    In fact, the anti-gay climate in the IRC was so pervasive that a transgender-man Columbia student entered the IRC first floor bathroom in September 2012 and committed self-harm by cutting his wrists. He bled in the IRC bathroom, smeared the walls with his blood, and made a statement that he did so because of the anti-LGBT climate in the IRC. Plaintiff was a witness to this and was living in the IRC when this incident occurred. Plaintiff was also on the scene when public safety arrived to cordon off the bathroom.

166.    Based upon the forgoing, as a direct and proximate result of the Defendant's conduct as alleged above, Plaintiff's academic and career prospects, earning potential, and reputation have been severely harmed and he has suffered loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages and has suffered damages including extreme emotional distress, and loss of capacity for the enjoyment of life.

167.    By reason of the forgoing, Plaintiff is entitled to all legal and equitable remedies available including an award of all applicable damages, prejudgment interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.

## COUNT III.

### 20 U.S.C. § 1681 *et seq*

### TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

### Erroneous Outcome

168.     Plaintiff realleges and incorporates all the allegations contained in preceding paragraphs

of this Complaint as though fully rewritten herein.

169.     Both the Department of Education and the Department of Justice have promulgated

regulations under Title IX that require a school to "adopt and publish grievance procedures

providing for the prompt and equitable resolution of student... complaints alleging any action

which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dept. of

Education); 28 C.F.R. § 54.135(b) (Dept. of Justice). Such prohibited actions include all forms of

sexual harassment, including sexual intercourse, sexual assault, and rape.

170.     On April 4, 2011 the United States Department of Education, Office for Civil Rights issued

a Dear Colleague Letter on Sexual Violence.

(https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf).

171.     On September 22, 2017 the United States Department of Education, Office for Civil

Rights (OCR) withdrew the Dear Colleague Letter on Sexual Violence, dated April 4, 2011 and

Questions and Answers on Title IX and Sexual Violence, dated April 29, 2014

(https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.), keeping in place

it guidelines Revised Sexual Harassment Guidance: Harassment of Students by School

Employees, Other Students, or Third Parties, Title IX, January 19, 2001

(https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf) (the OCR Standards) as

well as newly issued interim guidance (https://www2.ed.gov/about/offices/list/ocr/docs/qa-title- ix-

201709.pdf), Q&A on Campus Sexual Misconduct, September 2017

(https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf).

172.     As set forth herein, Assailant 2 was favored and John was treated adversely during Title

IX 2 in that among other things John's allegations that Assailant 2 physically assaulted him during

a date without his consent were not acknowledged by Columbia. Furthermore, Jack Doe was

favored and John was adversely treated during Title IX 1 in that among other things the credibility

of Jack Doe's allegations were flawed such that they were changed midway through the

investigatory process, and that John's allegations that Assailant 1 had sexually assaulted him in a

bathroom and engaged in sexual touching without his consent were reported but not acknowledged by Columbia and that John was found responsible for assaulting Jack Doe.

173.       As indicated by Title IX 2, Columbia is on the alert and willing to bring disciplinary actions against a gay male students. In Title IX 2, Columbia engaged in a series of actions that ultimately resulted in no investigation against Assailant 2.Title IX 2 established the pattern or practice under which Title IX 1's conclusions were erroneous.

174.       Columbia exhibited a pattern or practice of intentional and substantial sex bias when it failed to prosecute Assailant 1 for his actions against John which included the recording of a lewd video, and when it failed to prosecute Assailant 2 for his actions which included a bruised and battered lip and hospitalization, reaching an erroneous outcome by finding John responsible in Title IX 1 and punishing him.

175.       The erroneous outcome of finding John responsible for sexual assault in Title IX 1 was caused in substantial part by sex bias against gay males in cases involving allegations of sexual misconduct. This bias is reflected in the patterns of decision making and procedural missteps demonstrated by Columbia before and throughout the entire investigative process.

176.       Columbia's sex bias caused such erroneous outcomes in Title IX 1 as a) a protective order limiting his access to campus, c) a sanction that is not only a cloud on his academic record, but as a pre-existing record made him vulnerable to further sanctions, d) a second investigation, e) immediate and unwarranted separation from his residence, f) threats of disciplinary action based on alleged violations of the no contact order and g) other breaches of respondent's rights in a Title IX proceeding.

177.       Columbia's violations of its obligations under Title IX proximately caused John to sustain tremendous damages, including, without limitation, emotional distress, economic injuries, reputational damages, and the loss of educational and post-graduate opportunities and other direct and consequential damages.

178.       John is entitled to compensatory damages for the harm he suffered as a result of Columbia's violation of its Title IX obligations.

[47]

### COUNT IV.

### 20 U.S.C. § 1681 *et seq*

### TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

#### Selective Enforcement

179.    Plaintiff realleges and incorporates all the allegations contained in preceding paragraphs of this Complaint as though fully rewritten herein.

180.    Defendant exhibited patterns and practices of decision-making that show that the penalties John endured and the very decisions to initiate Title IX I and 2 against John as well as the decision to not initiate a Title IX action against Assailant 1 and Assailant 2 were motivated Columbia's pattern or practice of intentional animus against John's sexual orientation.

181.    John and Assailant 2 were similarly situated in that each reported to Columbia that the other violated Columbia's Title IX sexual misconduct Policy; however, Columbia encouraged and endorsed Assailant 2's claims against John, and discouraged and did not endorse John's claims against his assailant.

182.    John and Jack Doe were similarly situated in that John and Jack Doe reported accusations that violated Columbia's Title IX sexual misconduct Policy, but Columbia encouraged and endorsed Jack Doe's claims by initiating a third-party action on his behalf, and discouraged and did not support John's claims against Assailant 1.

183.    As indicated by Title IX 1, Columbia is on alert and willing to bring a disciplinary action on behalf of a straight student against a gay student, but not willing to bring a disciplinary action on behalf of a gay student against Assailant 1 even if the gay student alleges allegations of Policy violations similar to the allegations asserted by the straight student.

184.    As indicated by Title IX 2, Columbia is on the alert and willing to bring a disciplinary action on behalf of a straight student against a gay student, but not willing to bring disciplinary action on behalf of a gay student against Assailant 2, even when the heterosexual accuser is a physical assailant of the gay student.

[48]

185.     Moreover, although John was found not responsible in the second Title IX proceeding, Columbia pursued Assailant 2's allegations against John but not John's allegations against his assailant. Due to Columbia's inaction, John suffered severe emotional distress.

186.     Columbia was also deliberately indifferent to John's claims that throughout the course of the first Title IX investigation a) there was a breach of Columbia's duty to uphold the privacy and confidentiality of the proceeding when a Columbia administrator sent an email about the investigation to persons unrelated to the matter b) there was a breach of Columbia's duty to be notified of his right, and to uphold the rights of respondents, from making self-incriminating statements during the pre-complaint interrogation in John's residence hall c) there was a breach of Columbia's duty to notify respondent in writing of allegations against him before evicting John from his residence hall, and a breach in John's right to view unredacted all applicable documents prior to the hearing d) there was an anti-gay animus permeating the genesis of the first Title IX proceedings when Ms. Marta Esquilin in concert with Ms. Rosalie Siler pursued a fishing expedition in search of a violation the very next day after John published an open letter about the anti-gay climate in the IRC e) there was a breach of Columbia's duty to allow John to appeal the hearing panel's decision without intimidation from Columbia administrators f) there was a breach of Columbia's duty to report John's sexual assault as it was discovered by Defendant Columbia during the first Title IX proceedings and to investigate John's assault and offer him accomodative resources.

187.     Being indifferent to John's physical assault in the second Title IX action, Columbia seized the opportunity to bring a second action against John based on the allegations of another straight male student who decided to engage John in a sexual and/or romantic manner.

188.     Defendant Columbia exhibited a pattern or practice of anti-gay bias, sexual animus and sexually-motivated decision making during Title IX 2 by the differential and selective treatment he and the heterosexual accuser received in that, among other things, the undisputed facts showed that ██████████ ("Assailant 2") was the aggressor and that he acted willfully and with force.

189.     Defendant exhibited a pattern or practice of anti-gay bias during the disciplinary action by the differential selective treatment he and Assailant 2 received in that, among other things,

Assailant 2 alleged conclusory, false and unsubstantiated claims to which John was required to respond in a Title IX proceeding, but Assailant 2's evidenced physical assault was not investigated.

190.     Defendant exhibited a pattern or practice of anti-gay bias during both disciplinary actions by the differential and selective treatment he and Jack Doe and Assailant 2 received in that, among other things, Defendant could not attribute a negative motive to Jack or Assailant 2 but determined that by virtue of being accused, John could not be presumed innocent, but instead was presumed manipulative.

191.     Columbia exhibited intentional and substantial bias on the basis of race and sexual orientation when it failed to prosecute the white straight Assailant 2 for his actions against John which included a bruised and battered lip and resultant hospitalization

192.     Based upon the forgoing, as a direct and proximate result of the Defendant's conduct as alleged above, Plaintiff's academic and career prospects, earning potential, and reputation have been severely harmed and he has suffered loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages and has suffered damages including emotional distress, and loss of capacity for the enjoyment of life.

193.     By reason of the forgoing, Plaintiff is entitled to all legal and equitable remedies available including an award of all applicable damages, prejudgment interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.


**COUNT V.**

**42 U.S.C. § 2000d *et seg.***

**TITLE VI OF THE CIVIL RIGHTS ACT OF 1964**

**(Racial Discrimination)**


194.     Plaintiff realleges and incorporates all the allegations contained in preceding paragraphs of this Complaint as though fully rewritten herein.

195.     Plaintiff is African American and is a member of a protected class.

[50]

196.     Plaintiff had an excellent academic record upon arriving at Columbia and qualified to
continue his education and did so at Columbia.

197.     Plaintiff suffered a continuous violation of adverse actions in pursuit of his education by
Defendant Columbia, which was deliberately indifferent to a claim of racial harassment in which
Plaintiff was profiled as a sexual predator because of his race into disciplinary actions against
white students.

198.     Plaintiff suffered a very poor implementation of the Title IX process which egregiously
violated his rights as an African-American student and as an individual, causing severe harm to
himself and jeopardizing his academic studies.

199.     Title VI of the Civil Rights Act of 1964 protects people from discrimination based on race,
color or national origin in programs or activities that receive Federal financial assistance. Title VI
states that:

No person in the United States shall, on the ground of race, color, or national origin, be excluded
from participation in, be denied the benefits of, or be subjected to discrimination under any
program or activity receiving Federal financial assistance.

200.     Columbia was deliberately indifferent to John's October 23rd complaint of severe and/or
pervasive racial animus.

201.     Indeed, just after Title IX actions 1 and 2, it was clear that Columbia was selectively
enforcing their policies against Plaintiff, a student of color in proceedings against white/non-
colored students that reveals Columbia's severe racial animus.

202.     Plaintiff suffered an adverse action in pursuit of his education in that, among other things,
John was disciplined and sanctioned, put under a no-contact order, separated from Columbia on
medical leave, could not complete his academic semester, suffered severe emotional distress
and suicidal ideation, and lost a semester of school.

203.     John and Assailant 2 were similarly situated in that each alleged in reports to Columbia
that the other violated Columbia Title IX sexual misconduct Policy; however, Columbia

encouraged and endorsed Assailant 2's claims against John, and discouraged and did not endorse John's claims against his assailant.

204.     John and Jack Doe were similarly situated in that John and Jack Doe reported accusations that violated Columbia's Title IX sexual misconduct Policy, but Columbia encouraged and endorsed Jack Doe's claims by initiating a third-party action on his behalf, and discouraged and did not support John's claims against Assailant 1.

205.     As indicated by Title IX 1, Columbia is on alert and willing to bring a disciplinary action on behalf of a white student (or a student not of color) against an African American student, but not willing to bring a disciplinary action on behalf of an African American student even if the African American student alleges allegations of Policy violations more egregious than the allegations asserted by the white student.

206.     As indicated by Title IX 2, Columbia is on the alert and willing to bring a disciplinary action against an African American student, but not willing to bring a disciplinary action on behalf of an African American student against a white student even if the African American student alleges allegations of Policy violations similar to the allegations asserted by the white student.

207.     Defendant Columbia exhibited a pattern or practice of racial bias during Title IX 2 by the differential treatment he and the white accuser received in that, among other things, the undisputed facts showed that Assailant 2 was the aggressor and that he was acting willfully and with force.

208.     Defendant exhibited a pattern or practice of racial bias during the first Title IX disciplinary action by the differential treatment he and Jack Doe received in that, among other things, Defendant Columbia treated John as a predator and violated numerous rights in violation of its policies and procedures.

209.     Defendant Columbia exhibited a pattern or practice of racial bias during the disciplinary action by the differential treatment he, Jack Doe and Assailant 2 received in that, among other things, Defendant could not attribute a negative motive to Jack Doe or Assailant 2 but determined that by virtue of being accused, John, a student of color, could not be presumed innocent, but instead was presumed manipulative.

210.     Columbia exhibited intentional and substantial racial bias when it failed to prosecute Assailant 2 for his actions against John which included a bruised and battered lip, and resultant hospitalization, physical and psychological trauma and mental anguish and anxiety.

211.     Columbia exhibited intentional and substantial racial bias when Defendant Columbia willfully planned John's removal from his Columbia residence by threatening him with manufactured, baseless and biased disciplinary actions and by contravening its Title IX policies to implement an eviction interim measure before Plaintiff could have plausibly been aware that a Title IX complaint was filed against him.

212.     An intentional and motivating factor in Defendant's decision to proceed with both Title IX actions was the Plaintiff's race and/or color.

213.     As a result of Defendant's prosecution, Plaintiff was adversely treated causing detrimental interference delay in his education.

214.     Based upon the forgoing, as a direct and proximate result of the Defendant's conduct as alleged above, Plaintiff's academic and career prospects, earning potential, and reputation have been severely harmed and he has suffered loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages and has suffered damages including pain, suffering, mental anguish, psychological trauma, emotional distress, loss of capacity for the enjoyment of life.

215.     By reason of the forgoing, Plaintiff is entitled to all legal and equitable remedies available including an award of liquidated and punitive damages, prejudgment interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.

## COUNT VI.

## Violations of New York Civil Rights Law

## New York Sexual Orientation Non-Discrimination Act of 2002 ("SONDA")

## (Discrimination Based on Sexual Orientation)

216.     Plaintiff realleges and incorporates all the allegations contained in preceding paragraphs of this Complaint as though fully rewritten herein.

217.     "SONDA" prohibits discrimination on the basis of actual or perceived sexual orientation in employment, housing, public accommodations, education, credit, and the exercise of civil rights. In passing the law:

> "The legislature reaffirms that the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life, and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate **education**, training, housing or health care not only threatens the rights and proper privileges of its inhabitants, but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants."

218.     Plaintiff is a gay male and is in a protected class by New York law.

219.     The Plaintiff had a contract with Defendant Columbia under which it provided educational services to him which is defined in part by him paying sums to Defendant Columbia University to receive an education from the institution and is in part governed by a Code of Student Conduct and other University Regulations.

220.     Plaintiff suffered a continuous violation of adverse actions in pursuit of his education by Defendant in that Plaintiff was profiled and denied participation in an educational program, interrogated by a biased Columbia adminstrator in concert with a Title IX investigator one day after publishing a pro-gay open letter and complaining about gay discrimination, and denied the right to file a complaint of physical assault, by Defendant because of his sexual orientation.

221.     Defendant discriminated against Plaintiff by permitting a pattern or practice of sexual orientation discrimination against John in violation of Title IX as set forth herein.

222.     Such pattern or practice constitutes a continuing violation and Columbia is liable to John from September 2012 when Assailant 1 assaulted John to when John graduated in ▮▮▮ and the no-contact order against Jack Doe expired, to the present day due to Columbia's misrepresentations and concealments in the first Title IX action in October 2012.

[54]

223.    Columbia discriminated against John's sexual orientation and detrimentally and adversely affected Plaintiff's education because he is gay.

224.    Defendant's pattern or practice of sex discrimination was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

225.    As a direct and proximate result of Defendant's aforementioned conduct, Plaintiff has suffered extreme emotional and physical distress, mental anguish, humiliation and embarrassment.

226.    By reason of the continuous nature Defendant's discriminatory conduct, persistent from when he was sexually assaulted in September 2012 through the present day, Plaintiff is entitled to the application of the continuing violation doctrine and tolling to all of the violations alleged herein.

227.    Based upon the forgoing, as a direct and proximate result of the Defendant's conduct as alleged above, Plaintiff's academic and career prospects, earning potential, and reputation have been severely harmed and he has suffered loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages and has suffered damages including extreme emotional distress, and loss of capacity for the enjoyment of life.

228.    By reason of the forgoing, Plaintiff is entitled to all legal and equitable remedies available including an award of all applicable damages, prejudgment interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.

## COUNT VII.

### Intentional Infliction of Emotional Distress

229.    John repeats and realleges each and every allegation hereinabove as if fully set forth herein.

230.     As a result of Columbia's pattern or practice of sex-biased and/or racially motivated actions towards John, John suffered extreme emotional distress and suicidal ideation which led to a hospitalization for depression.

231.     Due to the sex-bias, sexual assault and Title IX proceedings events of Fall 2012, and Columbia's misconduct and infliction of emotional distress on John, he was forced to halt his studies and take a psychological leave of absence. This was John's first psychological-related injury for which he had ever needed to be under the care of a psychiatrist. Since then and to this day, Plaintiff has been under the care of at least eight (8) different psychiatrics, psychiatric counselors, spent hours in therapy every month and has taken various medications to cope with the discriminatory misconduct inflicted upon Plaintiff's psyche.

232.     Columbia's administrators in both Title IX actions acted with the willful malice of someone tripping a person wearing a cast and on crutches—they wanted to heighten John's distress so that he would become so emotionally ill.

233.     Columbia's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community in that the threats which were idle, were of a nature that Columbia knew could have devastating consequences on Plaintiff John Doe who was in a fragile emotional and physical state of health.

234.     Columbia acted recklessly, knowingly and/or intentionally in pursuing John with two investigations, while knowing his fragile emotional state and the likely impact of such threats upon his well being.

235.     Columbia's threats and violations of John's Respondent rights and civil rights were extreme and outrageous and were issued intentionally and/or in reckless disregard of causing him emotional distress.

236.     There was a causal connection between Columbia's actions and the emotional distress John suffered.

237.     The emotional distress John suffered was extreme and resulted in medically established symptomatology.

238.    As a direct and foreseeable consequence of the intentional infliction of severe emotional

distress by Defendant John sustained damages, including, without limitation, emotional distress,

economic injuries, and other direct and consequential damages.


## COUNT VIII.

## Breach of Contract

239.    John repeats and realleges each and every allegation hereinabove as if fully set forth

herein.

240.    Columbia's University Regulations, Rules of Conduct 2012-2013, Gender-Based

Harassment, Policy and Procedures for 2012-2013 and 2014-2015, and Columbia's Employee

Policies and Procedures on Discrimination, Harassment, Sexual Assault, Domestic Violence,

Dating Violence, and Stalking for 2014-2015 each represent a contractual commitment to its

students.

241.    John matriculated at Columbia and at all relevant times relied on their codes and policies.

242.    In particular, John relied on Columbia's duty as set for in their policies to not discriminate

on the basis of sex, race, color or disability in the administration of its educational policies or other

school administered programs.

243.    Columbia committed continuing violations of this Policy provision in 2012, 2013 and 2015

by granting white, male students, Jack Doe and Assailant 2 , access to Title IX resolutions, each

of whom was similarly situated to John, an African American student, as set forth herein, among

other continuing violations of university policies and procedures.

244.    Columbia committed continuing violations of this Policy provision in 2012, 2013 and 2015

by granting heterosexual male students, Jack Doe and Assailant 2 , access to Title IX resolutions,

each of whom was similarly situated to John, a gay student, as set forth herein, among other

continuing violations of university policies and procedures.

245.    As a result Jack and Assailant 2—white, male students-- had access to the Policy's full

procedural process for Title IX violations, yet Columbia did not grant John—an African American,

gay male student--the same rights under the Policy.

246.    In heavily redacting significant portions of the initial Title IX 1 complaint, and the

investigatory report, Columbia denied Plaintiff to the whole of his Respondent Rights under

university policy, by breaching the following policy/procedures per University Regulations and

Rules of Conduct:  "To an opportunity to challenge the Rules Administrator, members of the

University Judicial Board, or members of the Appeals Board for a possible conflict of interest",

wherein there may have been significant conflict of interests between the unknown third-party

complainant, the Plaintiff and the university's Title IX investigator, wherein "The University

requires any individual participating in the investigation, hearing process, sanctioning or appeal

process to disclose to the University any potential or actual conflict of interest"; "To refrain from

making self-incriminating statements" whereby the potential but unknown third-party complainant

and Title IX investigator commenced an interrogation and fact finding mission on October 5, 2012

-- two weeks before a third-party complaint was filed against Plaintiff; "To appeal the decision

made by a hearing panel and any sanctions" whereby a senior Columbia administrator

intimidated Plaintiff from appealing the hearing panel's sanction, threatening him with more

severe consequences; "[to] reveal information about its investigations and adjudication of

misconduct only to those who need to know the information in order to carry out their duties and

responsibilities [...] University personnel participating in an investigation, proceeding, or hearing

[...] are expected to maintain the privacy of the process and of the respondent" whereby that very

same senior Columbia administrator violated Plaintiff's right to privacy by forwarding an email

regarding the investigation and its proceedings to no less than eight (8) persons, including the

Plaintiff's academic advisor; "To notification, in writing, of a report of misconduct, any charge filed,

any resolution of the case, any factual findings of the investigation, any explanation of findings of

responsibility, and any imposed sanctions, including the outcome of any appeal" whereby Plaintiff

received only a heavily redacted version of the report of alleged misconduct and charges filed,

both of which were speciously altered while the Plaintiff was on medical leave; "To request

access to University documents or camera footage that can be used in one's defense" whereby
Plaintiff was disallowed from viewing *in camera* or otherwise the unredacted version of the report
of alleged misconduct; "To adequate time to review documents during and following the
investigation" whereby Plaintiff was evicted from his residence approximately fifteen (15) minutes
after receiving an initial voicemail and unseen email about a "serious student concern" (the first
such communication from Columbia's Title IX office) while he was at work; and further breaches
of contract enumerated throughout this pleading.

247.     In the Employee policy, under the Procedures for Complaints of Prohibited Conduct
section on page eleven (11) the policy reads "*The University takes allegations of prohibited
conduct very seriously, <u>and will actively investigate all alleged discrimination and/or harassment,
even in the absence of a complaint, and will take remedial action where appropriate</u>*, and *"Upon
receiving notice or otherwise learning that a University employee or third party has allegedly
engaged in prohibited conduct, EOAA will initiate an investigation."* Columbia did not allow
Plaintiff to file a complaint against Assailant 2 and breached this policy in Title IX 2 by not
respecting Plaintiff's autonomy to make a report or file a complaint against his assailant.

248.     By denying John the capacity of being a complainant in TItle IX 2, he was denied
protection pursuant to Columbia's policies.

249.     In Title IX 1, both John and Jack were engaged in a consensual kiss, and both John and
Jack alleged sexual assaults related to the evening of September 7, but only Jack and Assailant 1
were granted amnesty and only John was found responsible for sexual assault.

250.     By denying John his autonomy to be a complainant, Columbia also deprived John of such
reasonable and appropriate measures to protect the complainant and the complainant's access to
Columbia University employment or education programs and activities.


<u>Breach of Covenant to Uphold Individual Integrity</u>

251.     Columbia's policy on individual integrity requires that members of the Columbia
community will be truthful and forthright as set forth in its Code of Conduct. Columbia expects that

community members will not engage in behavior that has serious ramifications for the safety, welfare, academic well-being, or professional obligations of others.

252. In committing egregious violations of John's rights during Title IX 1 and Title IX 2, Columbia violated the policies of the Code of Conduct and Gender-Based misconduct policies and Employee policies.

253. Columbia's failure to hold Ms. Esquilin, Ms. Siler, Ms. Rooker or Jeri Henri accountable for individual integrity breached its own policies, the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

254. In both Title IX 1 and Title IX 2, Columbia has deprived John of his contractual rights to due process and equal protection through the improper administration of the Title IX process in violation of Columbia's guidelines and regulations.

<u>Defendant Columbia's Breach of John's Contractual Rights Caused Damage</u>

255. In committing egregious violations of John's rights during Title IX 1 and Title IX 2 by among other things heavily redacting the initial Title IX 1 complaint, committing multiple breaches of its own policies and not responding to plaintiff's reports of sexual assault and physical assault, and the inherent racism and anti-gay bias inherent in Columbia's actions, Columbia violated the policies of the Code and degraded, weakened and breached the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

256. Columbia agreed to allow its community members to live in a discrimination- and harrassment- free environment as stated in its Code (Rules of Conduct).

257. Columbia committed numerous investigative and procedural missteps and harbored an overall institutional bias against John, as a gay African-American student, accused of sexual misconduct during two student conduct proceedings.

258. John has lodged numerous written complaints to Columbia's administration regarding its mistreatment of John, its breach of its own policies, and its violations of federal and state law. Columbia has utterly failed to act.

259.     Columbia's discrimination of John, on the basis of his sexual orientation and race, breached its own policies, the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

260.     As a result of the foregoing, John is entitled to damages in an amount to be determined at trial, plus prejudgement interest, attorney's fees, expenses, costs and disbursements.

## COUNT IX.

### Covenant of Good Faith and Fair Dealing

261.     John repeats and realleges each and every allegation hereinabove as if fully set forth herein.

262.     Based on the aforementioned facts and circumstances, Columbia breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with John by causing his separation from the university based on a false complaint and resultant administrative misconduct, before he was ever notified of any complaint, and by making numerous categorical misstatements, fraudulent concealments and improper administrative actions in conducting a Title IX proceeding.

263.     As a direct and foreseeable consequence of these breaches, John sustained tremendous damages, including, without limitation, emotional distress, economic injuries, and other direct and consequential damages.

264.     John is entitled to recover damages for Columbia's breach of the express and/or implied contractual obligations described above.

265.     As a result of the foregoing, John is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT X.

### 42 USCS § 1981

### (Equal Rights under the Law—Racial Discrimination)

266.    John repeats and realleges each and every allegation hereinabove as if fully set forth herein.

267.    42 USCS § 1981 in relevant part requires that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other".

268.    42 USCS § 1981 protects the African American student's "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" pursuant to Columbia's Code of Student Conduct 2012-2013 and Sexual and Gender-Based Harassment, Sexual Violence, Relationship and Interpersonal Violence and Stalking Policy.

269.    Columbia's Code and Policy represent a contractual commitment to John.

270.    As an African American, Plaintiff is a member of a protected class.

271.    Plaintiff was qualified to attend Columbia and was accepted to Columbia with academic promise.

272.    Plaintiff suffered adverse actions in that he was deprived of his contractual rights pursuant to Columbia's Code and Policy as stated herein and in particular set forth in Count VIII and IX above.

273.    Most significantly, Columbia encouraged Jack, a white student, to assert a claim pursuant to its Code and Policy against John, an African American student, but discouraged John, as an African American, to bring a claim against his first assailant, Assailant 1 .

274.    Furthermore, Columbia encouraged Assailant 2, a white student, to assert a claim pursuant to its Code and Policy against John, an African American student, but discouraged John, as an African American, to bring a claim against his second assailant, Assailant 2 .

275.    As a result of the forgoing John was injured in July 2015 during a physical assault with no recourse. John was also unduly punished after being injured in September 2012.

276.     Columbia initiated a process pursuant to its Code and Policy on behalf of Jack, a white student, who was similarly situated to John, in that like John he alleged violations of Columbia's Title IX Policy. In 2012 and 2013, Columbia encouraged Jack to file a complaint or otherwise initiated a complaint on his behalf against John, an African–American student, as it did for John's second assailant in 2015.

277.     Both Jack and Assailant 2, non-black students, were similarly situated to John in that John, Jack and Assailant 2 each sought recourse for allegations of sexual misconduct pursuant to Columbia Title IX Policy and Code, but Columbia enforced its Policy and Code with respect to Jack and Assailant 2 -- the white students -- and did not enforce its Policy and Code with respect to John, the African- American student.

278.     Plaintiff also suffered violations to his academic well-being in that his access to campus was restricted and he was removed from his residence hall.

279.     Based upon the forgoing, as a direct and proximate result of the Defendant's conduct as alleged above, Plaintiff's academic and career prospects, earning potential, and reputation have been severely harmed and he has suffered loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages and has suffered damages including pain, suffering, mental anguish, psychological trauma, emotional distress, loss of capacity for the enjoyment of life.

280.     By reason of the forgoing, Plaintiff is entitled to all legal and equitable remedies available including an award of liquidated and punitive damages, prejudgment interest, attorneys' fees, costs and other compensation in an amount to be determined upon the trial of this action.

281.     As a result of the foregoing, John is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements pursuant to 42 USCS §1988.

### COUNT XI.

### New York Executive Law Section 296(4)

### (Equal Rights under the Law— Discrimination)

[63]

282.     John repeats and realleges each and every allegation hereinabove as if fully set forth herein.

283.     New York Executive Law, Article 15, Human Rights Law, section 296(4) provides in pertinent part:

It shall be an unlawful discriminatory practice for an education corporation or association ... to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age, or marital status[.]

284.     Based on the forgoing, Columbia permitted discrimination against John on the basis of his sexual orientation.

285.     Based on the forgoing, Columbia authorized, condoned, was deliberately indifferent to, approved of and/or acquiesced to discriminatory conduct and harassment against John.

286.     Based on the forgoing, Columbia had actual knowledge of such harassment and discriminatory conduct and failed to undertake any action to prevent or stop it.

287.     Specifically, Columbia, in violation of New York Executive Law, Article 15, Human Rights Law, section 296(4), intentionally discriminated against John on the basis of his sexual orientation as follows: by condoning a hostile educational environment due to knowingly permitting Columbia students in the rap-music group CUSH, student-rapist ███████ ("Adam" or "Assailant 1") and Columbia summer employee ███████ ("███" or "Assailant 2") to engage in prolonged, highly cruel and vulgar sex- and gender-based (on the basis of sexual orientation) harassment of, and sex-based misconduct, as to John based on John's sexual orientation; by permitting that sex-based harassment and sex-based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender-based harassment and misconduct; and by allowing such consequences that John has been effectively denied equal access to Columbia's resources and opportunities, thereby undermining and detracting from John's educational experience.

288.     Based on the forgoing, Columbia engaged in unlawful discriminatory practices in violation of N.Y. Exec. Law § 296(4).

289.     As a result of the forgoing, John is entitled to prevent discrimination based on his sexual orientation and other acts of gender-based harassment and gender-based misconduct that subjected John to a hostile educational environment in violation of New York Executive Law, Article 15, Human Rights Law, section 296(4).

290.     As a result of the forgoing, John is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## **Prayer for Relief**

**WHEREFORE**, for the foregoing reasons, John Doe demands the following relief from Defendant Columbia University:

(i) An award of compensatory damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional distress, psychological damages, loss of educational opportunities, economic injuries, and other direct and consequential damages, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii)  If warranted by the evidence, punitive damages;

(iii)  A declaratory judgment pursuant to 28 U.S.C. § 2201 that Defendant Columbia has intentionally discriminated against John on the basis of his sexual orientation by condoning a hostile educational environment;

(iv)  An injunction prohibiting Columbia University from taking any further action against John Doe with regard to the events described in the September 7, 2012 Letters, and injunctive relief to prevent threatened future acts of harassment;

(v)  An expungement of all records in John's academic file in connection with Title IX 1 and Title IX 2.

(vi)  An award of the costs and expenses of suit;

(vii)  Attorney's fees as well as attorney's fees and costs pursuant to 42 USCS §1988; and

(viii)  Such other and further relief as the Court deems just, equitable and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all matters for which there is a right to a jury trial.

Dated:  New York, NY

July 2, 2023

Respectfully Submitted,

/s/ John Doe

John Doe (pro se)

jddoe591@gmail.com